521 So.2d 1094 (1988)
James KEHOE, et al., Petitioners,
v.
STATE of Florida, Respondent.
No. 69814.
Supreme Court of Florida.
March 10, 1988.
*1095 Mark King Leban of the Law Offices of Mark King Leban, P.A., Miami, and Harry Gulkin, Fort Lauderdale, for petitioners.
Robert A. Butterworth, Atty. Gen., and Amy L. Diem and John W. Tiedemann, Asst. Attys. Gen., West Palm Beach, for respondent.
McDONALD, Chief Justice.
The decision of the district court in this case, State v. Kehoe, 498 So.2d 560 (Fla. 4th DCA 1986), directly and expressly conflicts with a decision of another district court, Porchay v. State, 321 So.2d 439 (Fla. 1st DCA 1975), disapproved on other grounds, Ensor v. State, 403 So.2d 349 (Fla. 1981). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We approve the result reached in Kehoe.
At 3:00 a.m., on October 14, 1984, Officer Williams observed a pickup truck, with an empty trailer attached, parked at an intersection near a motel in Deerfield Beach. Williams noticed that the license tag on the trailer was bent, but was readable nonetheless. At 5:45 a.m. Williams saw the same truck and trailer at a boat ramp in Pioneer Park with a white male (De Vivo) nearby. Although the park is open twenty-four hours a day, Williams became suspicious because of the hour.
At 7:00 a.m., as Williams' shift ended, vice officers Null and Hurt arrived in response to Williams' request. Williams then apprised Null and Hurt of the events stimulating his suspicion. At 7:55 a.m. Null saw a boat approaching, driven by Kehoe. The boat apparently had no registration number on its side. After carefully looking all around, Kehoe drove the boat onto the trailer and remained on board while De Vivo pulled the trailer from the boat ramp. Kehoe then climbed into the driver's seat and proceeded hastily out of the park. Null noted suspiciously that Kehoe did not pull the plug to allow water to drain from the boat or secure the boat before leaving. Furthermore, the back of the truck was loaded with rocks and bags of fertilizer which, according to Hurt, might be necessary to pull a heavy load up the ramp.
As the truck left, Null notified Officer Dusenbery to stop the truck. Dusenbery observed the tag violation although he later admitted that he stopped the vehicle primarily because instructed to. When Null and Hurt arrived a few minutes later, they discovered over 1,000 pounds of cannabis in the boat.
The circuit court grunted Kehoe's motion to suppress. The fourth district reversed, holding (1) the cumulative effect of the defendants' activities created a "founded suspicion" of criminal activity, and (2) even if there had not been sufficient evidence of a "founded suspicion" to justify the stop, it could still be upheld as a valid traffic stop.
Police may stop and investigate a motor vehicle when there is a "founded" suspicion of criminal activity in the mind of the police officer. Lewis v. State, 337 So.2d 1031 (Fla. 2d DCA 1976), cert. denied, 345 So.2d 427 (Fla. 1977). See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "A `founded suspicion' ... has some factual foundation in the circumstances observed by the officer, when those circumstances *1096 are interpreted in the light of the officer's knowledge." State v. Stevens, 354 So.2d 1244, 1247 (Fla. 4th DCA 1978).
To determine if there were ample grounds to give the police officers a founded suspicion of criminal activity we look at the cumulative impact of the circumstances perceived by the officers. In this case, the unusually early hour at the ramp, the long wait for the boat, the lack of registration numbers on the boat, the heavy items in the back of the truck, the suspicious manner in which the boat was loaded onto the trailer and driven away without draining or securing it, cumulatively, were adequate to raise a founded suspicion of criminal activity. Although each act separately could evince alternative explanations, viewed cumulatively, one would draw the conclusion that Kehoe and De Vivo were engaged or about to be engaged in illegal activity. For this reason, it was permissible to stop the truck, look into the boat, and, upon seeing the marijuana, seize it.[*]
Although the evidence is admissible, we should resolve the conflict regarding Kehoe's second contention, i.e., whether the traffic stop was invalid as a pretext stop because the officers' actual motivation for detaining Kehoe and De Vivo was their suspicions of drug trafficking, not the bent tag. These two issues are interwoven. When the police realize that they lack a founded suspicion, they sometimes attempt to justify a stop on some obscure traffic violation.
As pointed out above, the district court held the instant detention justified because of the traffic violation and denied Kehoe's pretextual stop argument. The court expressly relied upon State v. Ogburn, 483 So.2d 500 (Fla. 3d DCA 1986). In that case police officers suspected Ogburn's car was stolen. When they witnessed him illegally crossing double yellow lines on the highway, they pulled him over and discovered cocaine in the car under the driver's seat. The court held the stop was proper. "A lawful investigatory stop for a traffic violation is not invalidated by the fact that an officer would not have stopped a defendant but for the suspicion that the defendant was involved in criminal activity." Id. at 501. Because the officers could lawfully make the stop, the third district found the stop proper.
This approach directly conflicts with the approach adopted by the first district. In Porchay the police stopped the defendants' car solely because it looked suspicious; they discovered cannabis and firearms in the car. The police noticed that the vehicle had a bent license plate, although it is not clear from the opinion whether they noticed this before the stop. The first district held the evidence should have been suppressed because the only legal basis for the stop, a partially bent license plate, was merely a pretense. Although the officers could lawfully make the stop, because they would not ordinarily make the stop, the court held the stop to be improper.
Apparently, Porchay turned upon the officers' actual motivation for the stop. The court pointed out that one of the officers testified that they stopped the vehicle in order to identify the passengers. 321 So.2d at 440. Other courts have opted for a more objective analysis. In United States v. Smith, 799 F.2d 704 (11th Cir.1986), the eleventh circuit held that subjective intent is not controlling  the appropriate analysis is whether a reasonable officer would have stopped the car absent an additional invalid purpose. The existence of a fourth amendment violation "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time." Scott v. United States, 436 U.S. 128, 136, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978). We approve this test.
The state relies on our discussion of this issue in Hansbrough v. State, 509 So.2d 1081 (Fla. 1987). The police suspected Hansbrough of a recent homicide and began *1097 watching him. After being pulled over for making an illegal turn, Hansbrough gave the police information which led to his murder prosecution. This Court cited Ogburn and stated that the illegal turn was an infraction for which anybody could have been stopped regardless of the officer's knowledge that Hansbrough was a homicide suspect. Police officers ordinarily would likely stop somebody for making an illegal turn. For this reason Hansbrough is not controlling in situations where the traffic violation is too minor to warrant detention absent some other motivation.
We decline to adopt the Ogburn "could arrest" approach. Although it is the easiest test to follow, the fourth amendment constraints on intrusive searches and seizures transcend other concerns. Allowing the police to make unlimited stops based upon the faintest suspicion would open the door to serious constitutional violations. It is difficult to operate a vehicle without committing some trivial violation  especially one discovered after the detention. In the case under review, it appears the police decided to stop Kehoe before noticing the bent tag. Moreover, it is unlikely that a reasonable officer would have stopped Kehoe solely for this violation.
Because the officers had a founded suspicion, the detention was proper. This Court, however, will not allow officers to get around the fourth amendment's mandate by basing a detention upon a pure pretextual stop. The state must show that under the facts and circumstances a reasonable officer would have stopped the vehicle absent an additional invalid purpose. We approve the result reached by the district court, but disapprove its reliance on Ogburn.
It is so ordered.
OVERTON, EHRLICH, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[*] The cumulative facts distinguish this case from the circumstances found to be inadequate in Mullins v. State, 366 So.2d 1162 (Fla. 1978), cert. denied, 444 U.S. 883, 100 S.Ct. 173, 62 L.Ed.2d 113 (1979), Carter v. State, 454 So.2d 739 (Fla. 2d DCA 1984), and Kayes v. State, 409 So.2d 1075 (Fla. 2d DCA 1981), review denied, 424 So.2d 762 (Fla. 1982).