BARFIELD, Judge.
Harley C. Phillips pled nolo contendere to charges of being a principal to the sale of marijuana, possession of marijuana, and carrying a concealed firearm, specifically *1146 reserving his right to appeal the trial court’s denial of his motion to suppress a shotgun, a .38 revolver and a set of scales seized from his automobile by deputies during a stop following an arrest nearby of other individuals involved in a drug transaction. We hold that the trial court abused its discretion in denying the motion to suppress and reverse appellant’s conviction.
The stop occurred in the parking lot of a convenience store adjacent to a restaurant where the deputies, acting upon a tip from a confidential informant, arrested Leamon Thompson and Harold Attaway for drug trafficking. The confidential informant had told the officers that the deal would take place between him, Thompson and an undercover officer at the restaurant sometime after 10:00 p.m. The confidential informant also warned the deputies of possible counter-surveillance by the individuals involved in the deal[1] and that the individuals might be armed.
During the arrest of Thompson and Atta-way, the deputies found a shotgun in a truck, later determined to be Thompson’s vehicle, parked on the side of the restaurant. A few minutes after the arrest, appellant drove his white Trans Am, with passenger Eugene Booker, into the convenience store parking lot. Deputy Shelby, standing near Thompson’s truck, saw the white Trans Am and yelled to his fellow officers to stop the car. Upon Shelby’s order, Deputies Maacks and Joy stopped appellant. As they ordered appellant and Booker out of the car, they observed a shotgun lying across the transmission hump of the back seat and a set of scales sticking out of a paper sack located on the floorboard. Maacks then searched the console of the car and found a .38 revolver in the glove compartment. Maacks testified that he conducted the search for his personal safety.[2]
Shelby testified that fifteen minutes before the drug deal, he and Deputy Gravet were at the scene staking it out for possible counter-surveillance[3] when he saw a white, late 1970’s model Trans Am pull in and out of the convenience store lot and drive to a liquor store down the road from the restaurant. The car never approached the restaurant lot. He stated that he was not sure, at that time, if the car was involved in the drug transaction, but that he was “real sure” it was the same car in the lot after the deal, and although he could not positively identify the tag or occupants. He testified that he ordered the car stopped because he believed it might be involved in counter-surveillance and that in light of the shotgun found in Thompson’s vehicle, he feared for his personal safety.
The trial judge found that Deputy Shelby had a well-founded suspicion of criminal activity so as to justify the stop of appellant’s car. The judge noted that although Shelby lost sight of the white Trans Am at the liquor store and could not positively identify the car’s tag, he did see the white Trans Am come back after the arrest was in progress and pull into’ the parking lot. The judge also considered Deputy Maacks’ testimony that the white Trans Am made a semi-circle in the parking lot and attempted to go out the same place it entered without *1147 parking, and concluded that the totality of the circumstances warranted a well-founded suspicion to stop the car, and that the observance of the shotgun and the scales was enough to warrant a search of the car.
The Florida Stop and Frisk Law, section 901.151 Florida Statutes (1987), specifically grants police officers the right to stop and temporarily detain individuals under certain circumstances. It is well-established that the police may stop and investigate a motor vehicle when there is a well-founded suspicion of criminal activity in the mind of the police officer. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Kehoe v. State, 521 So.2d 1094, 1095 (Fla.1988). It is also well-established that police may not stop a motor vehicle arbitrarily or on a bare suspicion that the occupants are violating the law. Mullins v. State, 366 So.2d 1162, 1163 (Fla.1978). “A founded suspicion is a suspicion which has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer’s knowledge”. State v. Stevens, 354 So.2d 1244, 1247 (Fla. 4th DCA 1978). In determining whether the officer had a founded suspicion, the trial court should look at the “cumulative impact of the circumstances perceived by the officer”. Ke-hoe, 521 So.2d at 1096.
The “cumulative impact of the circumstances” as observed by Deputy Shelby does not support a well-founded suspicion that appellant was involved in the criminal activity at hand. Shelby stopped appellant’s car because he believed the car was involved in the drug deal as counter-surveillance. His belief stemmed from: (1) the confidential informant’s alleged warning of possible counter-surveillance; (2) Shelby’s independent knowledge and experience that defendants in drug transactions as large as this one commonly use counter-surveillance; and (3) Shelby’s own observance of a white Trans Am in the same parking lot adjacent to the restaurant fifteen minutes prior to and again a few minutes after the deal.
Police may stop and frisk based upon an anonymous tip, if the information is “sufficiently reliable because of the surrounding circumstances or the nature of the information given in the tip itself.” Hetland v. State, 387 So.2d 963 (Fla.1980). While the confidential informant gave the deputies accurate information concerning the details of the drug transaction, the information with reference to being followed, i.e., counter-surveillance, lacked any identification of the white Trans Am or the individuals involved. In essence, the tip was vague, non-descriptive and insufficient to meet the test in Hetland. Shelby apparently overheard the conversations between the confidential informant and Maacks, but when he staked out the area he had nothing more to go on than his knowledge that these types of deals often include defendants who use counter-surveillance and are armed. Without more, his observance of the white Trans Am prior to and after the deal creates only a bare suspicion of criminal activity-
Florida courts have invalidated similar stops. See Coladonato v. State, 348 So.2d 326 (Fla.1977) (stop of U-Haul van, after being seen for the third time driving through business district in the evening hours, because it was unusual for it to be there at that time of night); White v. State, 458 So.2d 1150 (Fla. 1st DCA 1984) (detention and arrest of defendant who was asleep in his car parked next to a recently burglarized school; court rejected the argument that defendant was a lookout). Conversely, in Kehoe v. State, 521 So.2d 1094 (Fla.1988), the court upheld a stop based upon the cumulative effect of observing defendant’s truck three times: first at 3 a.m. parked near a motel with an empty trailer; then at 5:45 a.m. at a boat ramp of a park open 24 hours; and finally at 7:55 a.m. when the defendant pulled a boat with no registration number out of the water and without draining it drove his heavily weighted truck hastily out of the park.
In the instant case, appellant did not do anything overtly illegal by driving into the store lot, making a semi-circle and leaving from the same direction that he entered. His conduct suggested no more than a bare suspicion of criminal behavior. Under *1148 these circumstances, effective crime prevention does not justify the intrusion of his privacy rights under the Florida and U.S. Constitutions. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Since Deputy Shelby was not justified in stopping appellant, the subsequent search of his vehicle was illegal and the trial court erred in denying appellant’s motion to suppress. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
Appellant’s convictions are REVERSED.
JOANOS and WIGGINTON, JJ„ concur.

.Negotiations for the deal began at the Escam-bia County Sheriffs Department with phone calls between the confidential informant and Thompson. The basis for the tip concerning counter-surveillance appears to be that when the informant was sent home to await a phone call from Thompson, he saw some cars parked in a Winn Dixie store parking lot, one of which he thought was Thompson’s vehicle. After Thompson’s arrest and before the stop of Phillips, Deputy Maacks pulled the confidential informant aside, the informant told Maacks that at least one of the cars he had seen in the Winn Dixie lot followed or tried to follow him across the Escambia River bridge, but the confidential informant did not otherwise identify the cars.

. The State asserts that the deputies had probable cause to arrest appellant as a principal to the drug transaction, section 777.011, Florida Statutes (1987), and possession of drug paraphernalia, section 893.147(l)(a), Florida Statutes (1987), and after the search of the glove compartment, carrying a concealed weapon, section 790.07(2), Florida Statutes (1987).

. Shelby testified that he overheard the conversation between the confidential informant and Dep. Maacks concerning counter-surveillance and that it was one of his duties to stake out the area. Additionally, deputy Maacks testified that in large drug deals such as the instant case it was common for the defendants to use counter-surveillance.