554 So.2d 545 (1989)
Hector VELEZ and Ruiz Velez, Appellants,
v.
STATE of Florida, Appellee.
Nos. 88-54, 88-1441.
District Court of Appeal of Florida, Fifth District.
November 22, 1989.
Rehearing Denied January 5, 1990.
James B. Gibson, Public Defender and Barbara L. Condon, Asst. Public Defender, Daytona Beach, for appellants.
Robert A. Butterworth, Atty. Gen., Tallahassee and Paula C. Coffman, Asst. Atty. Gen., Daytona Beach, for appellee.
SHARP, Judge.
Hector and Ruiz Velez appeal from their convictions for trafficking in cocaine in violation of section 893.135(1)(b)(3), Florida Statutes (1985). Their cases were consolidated for appeal. They argue that the trial court erred by denying their respective *546 motions to suppress evidence of the cocaine found in the trunk of the car in which they were traveling. They urge that the initial stop of their car by Trooper Vogel was invalid and therefore Hector's consent to search the car was tainted by the prior illegal police action. We affirm because the record supports the trial court's decision that there was a valid stop under the test enunciated in Kehoe v. State, 521 So.2d 1094 (Fla. 1988).
Both orders denying the motions to suppress made the following findings of fact:
1. The defendant has standing to contest the search.
2. The stop of the motor vehicle was a legal stop based on a traffic violation committed in Trooper Vogel's presence.
3. The consent to completely search the motor vehicle and its contents were [sic] freely and voluntarily given based on the totality of the circumstances. The preponderance of evidence burden of proof is utilized there being no police misconduct presented. The search conducted of the motor vehicle was lawful.
We agree that both Hector and Ruiz have standing to contest the search of the car. Hector owned the car he was driving on I-95 at the time he was stopped; and Ruiz was his front seat passenger. See Tongue v. State, 544 So.2d 1173, n. 1 (Fla. 5th DCA 1989); See also State of Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 1394, 59 L.Ed.2d 660 (1979).
Trooper Vogel testified that he stopped the car to issue a warning for following another vehicle too closely, a minor traffic violation under section 316.0895.[1] He testified he observed the vehicle driving north on I-95 at 12:30 p.m. As the car drove by his concealed location Vogel thought it was exceeding the speed limit. He also candidly admitted that the vehicle and its passengers displayed some characteristics of his "drug courier profile."[2]
Vogel immediately pulled out from the median and confirmed that the vehicle was travelling at the legal rate of fifty-five miles per hour. He also observed that the car was following too closely behind another vehicle in violation of section 316.0895. He pulled the car to the side of the road, and issued a written warning. He also checked Hector's drivers license and registration. Everything appeared in order.
However, Trooper Vogel's suspicions were aroused. He presented a consent to search form to Hector and asked him to read it. Hector looked at the form for several minutes. Vogel then asked him if he understood the contents and Hector replied he did. He signed the form.
Vogel searched the vehicle and found a false compartment in the trunk and a "sloppy putty job". Vogel then had cause to detain the vehicle. A dog-sniffing team arrived 40 minutes later and the dog indicated the presence of the contraband. Cocaine was eventually found, and it was the subject of the appellants' motions to suppress.
In Kehoe, the Florida Supreme Court held that in order to establish that a traffic stop was not invalid as a pretextual stop the state would have to show, and the trial court would have to find, that "[a] reasonable officer would have stopped the car absent an additional invalid purpose." Kehoe at 1096. See also Clemons v. State, 533 So.2d 321 (Fla. 5th DCA 1988); cf. Porcher v. State, 538 So.2d 1278, 1279 (Fla. 5th DCA 1989) (Sharp, C.J. concurring specially). The only evidence in the instant case regarding the initial stop is found in *547 two separate portions of Trooper Vogel's testimony. Upon cross examination by defendants' counsel, the following exchange took place:
Q. Okay. It's my understanding you then noticed that the car was following approximately two or two and a half car lengths behind the car in front of it, is that correct?
A. Two car lengths.
Q. Two car lengths. Do you remember, do you recall what type of car it was following?
A. No, I am sorry, I don't.
Q. Do you recall what kind of license that car had?
A. No, I don't.
Q. Is there any indication that the two cars were together?
A. I didn't make that determination. Didn't, didn't believe they were.
Q. Okay. Is it fair to say that probably not a day goes by where you are on duty on I-95 when you see cars following two car lengths behind another car, is that correct?
A. Yes.
Q. And am I correct in assuming you do not stop every car you see go by you on I-95 that is following two car lengths behind the car in front of it, is that correct?
A. That's correct.
Q. Okay.
Upon redirect examination, the attorney for the state asked the following question and received the following answer.
Q. Trooper Vogel have you stopped other cars for following too closely?
A. Yes, I have.
We must interpret the evidence and all reasonable deductions arising therefrom in a manner most favorable to the trial court's ruling.[3] On the basis of Trooper Vogel's testimony that he had stopped other cars for a similar infraction, the trial court, as the trier of fact, could reasonably infer that stops of this type[4] were made for the purpose of "advertising" police presence on the highway. Therefore, we affirm the trial court's finding that Trooper Vogel made a valid initial stop of the car.
The defendants argue that Vogel's testimony is tantamount to an admission that a reasonable officer probably would not have stopped this vehicle, and on these facts, section 316.0895 affords no basis upon which to justify the stop. We disagree with this conclusion because its application would invalidate every traffic stop made by a police officer, including those made for speeding, unless the officer could testify that he stopped every car observed violating the particular infraction. It is a matter of common knowledge that the occasional stopping of a vehicle for a minor infraction occurs to "advertise" law enforcement presence on our highways and roads, and promote safe driving. Whenever one sees an officer ticketing or appearing to ticket a vehicle on a highway or road, the universal reaction is to slow down, and drive carefully.
The last question to be decided is whether the trial court applied the appropriate standard in determining that consent to search the vehicle was freely and voluntarily given. Because the initial stop was valid, the trial court utilized the correct standard, i.e., whether the state did in fact show by a preponderance of the evidence that consent was freely and voluntarily given. Denehy v. State, 400 So.2d 1216, 1217 (Fla. 1980). The clear and convincing standard is applicable only when the initial stop or detainment was illegal. See Norman v. State, 379 So.2d 643 (Fla. 1980); Castillo v. State, 536 So.2d 1134 (Fla. 2d DCA 1988); *548 Tennyson v. State, 469 So.2d 133, 136 (Fla. 5th DCA 1985).
AFFIRMED.
COWART, J., concurs.
COBB, J., dissents with opinion.
COBB, Judge, dissenting.
The first issue is whether or not the state carried its burden, under Kehoe v. State, 521 So.2d 1094 (Fla. 1988), of showing that a reasonable officer would have stopped the Velez vehicle absent the drug suspicions admittedly entertained by Trooper Vogel. The state did not directly address this issue at trial, a deficiency attributable to the fact that the instant suppression hearing held in October, 1987, preceded the issuance of the Kehoe opinion. Therefore, the trial court made no finding that a "reasonable officer would have stopped the car absent an additional invalid purpose." The simple testimony by Vogel that he has stopped some cars and not others for the offense of following too closely, with no correlating explanation of the factual circumstances of those instances, falls far short of the criterion established by Kehoe, and we are bound by that criterion. See Clemons v. State, 533 So.2d 321 (Fla. 5th DCA 1988).[1]
The second issue for our consideration is whether or not the consent to search executed by Hector Velez was valid notwithstanding the improper stop. The voluntariness of that consent must be assessed by the trial court pursuant to a standard of clear and convincing evidence, not merely one of preponderance. See Norman v. State, 379 So.2d 643 (Fla. 1980); Castillo v. State, 536 So.2d 1134 (Fla. 2d DCA 1988); and Tennyson v. State, 469 So.2d 133 (Fla. 5th DCA 1985). As we stated in the latter case:
The only instance in which a consent rendered involuntary by prior, illegal police action may still validate a warrantless search under the Fourth Amendment is where the State proves by clear and convincing evidence that there has been an unequivocal break in the chain of illegality sufficient to dissipate the taint of the prior illegal action. Norman v. State. If there is not clear and convincing evidence, in the record, of an unequivocal break between appellant's illegal detention and his subsequent consent to the search of his vehicle, we cannot conclude that his consent was voluntary. In Bailey v. State, the Supreme Court of Florida noted that it will be a rare case where the state is able to produce such evidence: "Ordinarily consent given after an illegal arrest will not lose its unconstitutional taint." 319 So.2d 22 at 28 [Fla. 1975]; See also, Taylor v. State [, 355 So.2d 180] [(Fla.App. 1978)].
Tennyson at 135, 136.
In the instant case the trial court expressly utilized a preponderance of the evidence standard in assessing the voluntariness of Velez's consent. Moreover, there was no clear and convincing evidence in this record of an unequivocal break between the illegal detention and the subsequent consent.
For the foregoing reasons, extant case law in Florida requires reversal, however distasteful that may be given the obvious guilt of the two drug runners in the instant case. This case is another vivid illustration of the difficulties imposed upon a judiciary seeking to fill the void left by "a legislative abdication of responsibility in the area of curtailing drug trafficking on the arterial highways of Florida." Cresswell v. State, 524 So.2d 685 (Fla. 5th DCA 1988) (Cobb, J., concurring specially).
Despite the temptation to do otherwise, I am compelled to dissent.
NOTES
[1] Section 316.0895, Florida Statutes (1985) provides in pertinent part:

(1) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon, and the condition of the highway.
[2] See In re: Forfeiture of $6,003.00 in U.S. Currency, 505 So.2d 668 (Fla. 5th DCA); rev. denied, 511 So.2d 998 (Fla.), cert. denied, Florida v. Coleman, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987), wherein we held that the drug courier profile developed by trooper Vogel was too generalized and unparticularized to permit an investigatory stop. See also State v. Johnson, 516 So.2d 1015 (Fla. 5th DCA 1987).
[3] An order granting or denying a motion to suppress is presumptively correct and a reviewing court should interpret the evidence and reasonable inferences and deductions drawn therefrom in a manner most favorable to sustaining the trial court's ruling. Medina v. State, 466 So.2d 1046, 1049-1050 (Fla. 1985); Johnson v. State, 438 So.2d 774, 776 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984).
[4] By "type" we mean either (a) when an officer has initially observed the minor infraction or (b) confirming that the alleged speeding infraction was not violated, but that another offense has been spotted.
[1] There is absolutely no legal basis to support the majority's substitution of an inference of "advertising police presence" for the "founded suspicion of criminal activity" required by Kehoe and other case law.