DANIEL, Chief Judge.
The state appeals from an order granting defendant Jack Junlas Jackson’s motion to suppress evidence seized during a search of his car. We reverse.
Officer William Hart of the Titusville Police Department clocked Jackson traveling 78 miles-per-hour on Interstate 95. Hart pursued and stopped Jackson and, once stopped, Jackson exited his car pleading to be given a break and acting very nervously. Hart testified that he talked to Jackson for a few minutes and asked whether he had anything illegal in his car. Upon receiving a negative reply, Hart asked if he could search the car and received permission from Jackson to do so. In searching the car Hart observed a styro-foam cooler on the front passenger seat and, upon opening the cooler, discovered a plastic baggie containing an aluminum foil package. When Hart removed the baggie from the styrofoam cooler Jackson grabbed it, shoved Hart away from the car, and put the baggie back into the cooler. Jackson then stated that the baggie contained a sandwich and that he did not want Hart to search his car any further.
At this point Hart radioed for a backup with a canine patrol. Prior to the arrival of the canine patrol, Jackson got back into his car and attempted to leave the area. Hart ordered Jackson to stop and to get out of the car. Jackson complied. Upon arrival, the dog began its search of the car and alerted to the passenger side where the styrofoam cooler was located. Hart then retrieved the baggie from the cooler and, upon opening it, discovered cocaine. Jackson was then placed under arrest for possession of cocaine.
Jackson filed a pretrial motion to suppress the cocaine seized from the styro-foam cooler, asserting that the seizure .was the result of an unlawful stop. The trial court entered an order granting Jackson’s motion to suppress:
The motion to suppress shall be granted because when the police officer stopped the defendant from driving away in his vehicle the police officer did not possess articulable facts upon which a founded suspicion could be based that a crime was being committed....
A police officer may stop a person based upon a reasonable and articulable suspicion that the person has committed, is committing, or is about to commit a crime. § 901.151, Pla.Stat. (1981). See also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Jacobson v. State, 476 So.2d 1282 (Fla.1985). The initial stop of Jackson by Officer Hart was clearly proper inasmuch as Hart observed Jackson speeding on the highway. The initial search of Jackson’s car was also proper because Jackson voluntarily granted permission for *737 such search. Thus the issue is whether, at the time Hart detained Jackson to await the canine patrol, there were sufficient grounds to give Officer Hart a reasonable and articulable suspicion that Jackson was involved in criminal activity.
To determine whether there were ample grounds to give police officers a founded suspicion of criminal activity, the courts look to the cumulative impact of the circumstances perceived by the officers. Kehoe v. State, 521 So.2d 1094 (Fla.1988). See also Tamer v. State, 484 So.2d 583 (Fla.1986). In Kehoe, the court summarized the underlying facts as follows:
At 3:00 a.m. on October 14, 1984, Officer Williams observed a pickup truck, with an empty trailer attached, parked at an intersection near a motel in Deerfield Beach. Williams noticed that the license tag on the trailer was bent, but was readable nonetheless. At 5:45 a.m. Williams saw the truck and trailer at a boat ramp in Pioneer Park with a white male (DeVivo) nearby. Although the park is open 24 hours a day, Williams became suspicious because of the hour.
At 7:00 a.m. as Williams’ shift ended, vice officers Null and Hurt arrived in response to Williams’ request. Williams then apprised Null and Hurt of the events stimulating his suspicion. At 7:55 a.m. Null saw a boat approaching, driven by Kehoe. The boat apparently had no registration number on its side. After carefully looking all around, Kehoe drove the boat onto the trailer and remained on board while DeVivo pulled the trailer from the boat ramp. Kehoe then climbed into the driver’s seat and proceeded hastily out of the park. Null noted suspiciously that Kehoe did not pull the plug to allow water to drain from the boat or secure the boat before leaving. Furthermore, the back of the truck was loaded with rocks and bags of fertilizer which, according to Hurt, might be necessary to pull a heavy load up the ramp.
As the truck left, Null notified Officer Dusenbery to stop the truck. Dusenbery observed the tag violation although he later admitted that he stopped the vehicle primarily because he was instructed to. When Null and Hurt arrived a few minutes later, they discovered over 1,000 pounds of cannabis in the boat.
521 So.2d at 1095.
The court concluded that the cumulative impact of the circumstances perceived by the police officers was sufficient to raise a founded suspicion that Kehoe was engaging in criminal activity and therefore the stop of Kehoe’s vehicle was proper:
[T]he unusually early hour at the ramp, the long wait for the boat, the lack of registration numbers on the boat, the heavy items in the back of the truck, the suspicious manner in which the boat was loaded onto the trailer and driven away without draining or securing it, cumulatively, were adequate to raise a founded suspicion of criminal activity. Although each act separately could evince alternative explanations, viewed cumulatively, one would draw the conclusion that Ke-hoe and DeVivo were engaged in or about to be engaged in illegal activity. For this reason, it was permissible to stop the truck, look into the boat, and, upon seeing the marijuana, seize it.
521 So.2d at 1096.
We hold that here the cumulative effect of Jackson’s conduct accorded Officer Hart reasonable grounds to detain Jackson and to subject his car to a canine search. Jackson’s extreme nervousness after having been stopped for speeding, his grabbing the baggie from the officer, his withdrawal of his previously given permission to search, and his attempting to leave the scene upon being advised that the officer had called for a backup with canine capacity all contributed cumulatively to raise a founded suspicion of criminal activity-
The order granting the defendant’s motion to suppress is reversed and this matter is remanded for further proceedings.
REVERSED and REMANDED.
HARRIS, J., concurs.
COBB, J., dissents with opinion.