606 So.2d 460 (1992)
Hal A. DAVIS, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 91-2678.
District Court of Appeal of Florida, First District.
October 12, 1992.
*461 Brian T. Hayes, P.A., Monticello, for appellant.
Robert A. Butterworth, Atty. Gen., Laura Rush, Asst. Atty. Gen., Tallahassee, for appellee.
ERVIN, Judge.
Appellant, Hal Davis, Jr., challenges his conviction for possession of cannabis and the probationary sentence imposed therefor. He argues that the trial court erred by denying his motion to suppress evidence found during an illegal stop, in that the officer who stopped him lacked a founded or reasonable suspicion that he had committed, was committing, or was about to commit a crime. We agree, and reverse and remand with directions.
At the hearing on the motion to suppress, the following facts were presented. During the evening of December 10, 1990, appellant, an off-duty employee of the Department of Environmental Regulation, drove a state vehicle onto Adams Beach in Taylor County. His purpose, he said, was to watch the sun set and let his dog run on the beach. Appellant obtained access to the beach by a paved road that dead-ends at the beach. At approximately the same time, Sheriff's Deputy Brian Faircloth received from a dispatcher a report from an anonymous tipster of a "possible drug transaction going on" and of "suspicious activity on the beach" involving vehicles and vessels. When Deputy Faircloth arrived at the scene, he observed an automobile on the beach with its lights out and three or four boats off shore.
Apparently after noticing Faircloth's patrol car parked at the end of the paved road, appellant started his automobile and drove it toward Faircloth at the end of the paved road. When appellant was within 50 to 75 yards of the officer, Faircloth shined his spotlight on appellant's car and called to him over his public address system. The officer ordered appellant to turn off his lights and ignition, and to leave his automobile and approach the deputy's car with his hands out at his side. Faircloth testified that after appellant had exited the vehicle he detected appellant's bloodshot eyes, his red face, and a slight odor of alcohol. Based upon these observations, Faircloth arrested appellant for DUI. Some time later, appellant was given breathalyzer tests which twice showed a blood alcohol content of.09 percent.
Deputy Faircloth held appellant at the scene while he called in other officers. They arrived between five and twenty minutes later with a police dog, which alerted at appellant's vehicle. The officers then searched the vehicle and discovered more than 20 grams of marijuana and drug paraphernalia in a duffel bag behind the driver's seat.
Although Faircloth stopped appellant based on the anonymous tip of suspected drug activity, he also testified that he *462 would have stopped appellant in any event for driving on the beach. In regard to this issue, the following testimony was adduced:
Q. Aside from the anonymous tip you had regarding drug activity on the beach, and the boats you saw and the vehicle you saw, and so on, what action would you have taken had you seen a vehicle driving on the beach at that time?
A. [Faircloth] The same actions. I would have stopped the vehicle.
Q. Why?
A. Because that is, we don't allow people to drive on the beach. Any time we stop people or see people at that beach or any other beaches, and they are on the beach, we ask them to leave, if they are capable of leaving, and we let them leave. If not, we take further action.
* * * * * *
Q. What is your policy regarding, being a deputy sheriff, regarding persons driving on the beach in Taylor County, Florida?
A. That it is not allowed.
Q. What is the policy of the Department?
A. That we make contact with the violator and ask him to leave.
Q. So on all occasions such as this, you would make a stop?
A. Yes, sir.
Despite this testimony, on cross-examination Deputy Faircloth admitted that he earlier testified during his deposition that he had never stopped anyone other than appellant for driving on the beach. He also stated that no one, to his knowledge, had ever been charged with trespass for driving on the beach. Indeed, no signs were posted forbidding trespassing or vehicles from driving on the beach.
The trial court based its order denying the motion to suppress on the alternative grounds that (1) the officer's initial stop of the vehicle was based upon a reasonable suspicion of criminal activity, and (2) the initial stop was justified because the officer would have stopped appellant anyway for driving on the beach. Thereafter, appellant pled no contest to the possession charge, reserving the right to appeal the court's denial of his motion to suppress.
On appeal Davis argues that Deputy Faircloth lacked reasonable suspicion to support the initial stop of his vehicle and that the evidence subsequently discovered should be suppressed as the fruit of an unlawful search and seizure. We agree that Deputy Faircloth lacked reasonable suspicion of criminal activity so as to justify the stop. A police officer may temporarily detain a person for the purpose of ascertaining his or her identity if the officer believes that the person has committed, is committing, or is about to commit a criminal offense. Section 901.151(2), Fla. Stat. (1989). An investigatory stop may be based on an anonymous tip if the tip contains sufficient indicia of reliability. Swanson v. State, 591 So.2d 1114, 1116 (Fla. 1st DCA 1992). The reliability of the tip is judged by its specificity and independent police corroboration of significant aspects of the informant's predictions. Id.
In the present case, Deputy Faircloth was dispatched to the scene on the basis of an anonymous tip. The tip, however, carried a low degree of reliability because it was extremely vague. The informant stated that "suspicious activity" and possible drug activity was occurring involving vehicles and boats but did not state the nature of the activity taking place. The tip did not identify any individual, either by name or by appearance. Cf. State v. Hetland, 366 So.2d 831, 833 (Fla. 2d DCA 1979) (anonymous tip named suspect and described him), approved, 387 So.2d 963 (Fla. 1980). Nor did the tip identify a vehicle by tag number or even by make, model, or other descriptive term. Although Deputy Faircloth drove to the scene quickly, it is highly questionable whether his observations could be deemed corroborative of the criminal activity reported by the informant. Cf. Robinson v. State, 556 So.2d 450 (Fla. 1st DCA 1990) (finding that even though the trespassing defendant matched the anonymous informant's description, reasonable suspicion was not established where *463 the officer's observations did not corroborate the incriminating aspects of the tip). Faircloth merely observed a vehicle on the beach and several boats in the water. The officer neither testified that the boats were near shore nor departing from shore, nor that they were involved in any communication or exchange with the occupant of the vehicle. Moreover, no testimony was adduced that appellant's conduct appeared suspicious or suggestive of criminal activity. Cf. Kehoe v. State, 521 So.2d 1094 (Fla. 1988) (cumulative effect of defendants' activities involving truck and boat created founded suspicion of criminal activity). From our examination of the record, we conclude that Deputy Faircloth stopped appellant primarily because of the vague tip of suspicious activity and because of the awareness of past drug activity in the area. Such facts are insufficient to constitute reasonable suspicion of criminal activity.
Turning to the trial court's alternative basis for denying the suppression motion, i.e., that the stop was justified because the officer would in any event have stopped appellant for driving on the beach, we disagree and conclude that the stop was pretextual. Our supreme court established the following test for pretextual stops: "[T]he appropriate analysis is whether a reasonable officer would have stopped the car absent an additional invalid purpose." Id. at 1096 (emphasis added). The court explained that "[t]he existence of a fourth amendment violation `turns on an objective assessment of the officer's actions in light of the facts and circumstances.'" Id. (quoting Scott v. United States, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)). More recently, in Doctor v. State, 596 So.2d 442, 446 (Fla. 1992), the court stressed that the test is not whether the officer could have stopped the defendant, but whether a reasonable officer would have made the stop.
In the instant case, although the deputy sheriff who stopped appellant testified that driving on the beach is not allowed in Taylor County, and that it is the policy of the sheriff's department to make contact with persons who are seen driving on the beach and ask them to leave, he admitted that he had never caught anybody out there and had no knowledge of anybody previously having been arrested for trespass on the beach. Cf. Brown v. State, 577 So.2d 708 (Fla.2d DCA 1991) (stop of defendant for illegal parking was pretextual in that defendant was never cited for a traffic violation, and arresting officer was unable to cite any ordinance and state did not present evidence of such ordinance). Indeed, any attempt to justify the stop on the basis that appellant was driving on the beach is questionable in view of the fact that at the time the stop was effected, appellant was driving his car off the beach and had almost reached the paved road leading away from the beach. Moreover, any suggestion that the deputy stopped appellant for the purpose of telling him to leave the beach is belied by the fact that he never had such conversation with appellant, and that his reason for not doing so was because he was in a "different mode," that is, investigating the anonymous tip regarding vehicles and vessels at the beach involved in drug transactions.
We are cognizant that the trial court's order comes to this court clothed with a presumption of correctness. State v. Lagree, 595 So.2d 1029, 1032 (Fla. 1st DCA), review denied, 601 So.2d 553 (Fla. 1992). We also understand that in matters of suppression, the trial court sits as both trier of fact and of law, and that matters pertaining to the credibility of witnesses and the weight of the evidence are exclusively within its province. State v. Polak, 598 So.2d 150, 152 (Fla. 1st DCA 1992). However, a trial court's determinations as to factual matters can only be accepted on appeal if the record supports them. Id.
In the instant case, the officer's testimony does not provide record support for a determination that a reasonable officer would have stopped appellant under the circumstances. Regardless of his testimony as to the existence of the department's policy, there was no evidence that the policy was ever used to stop other persons under similar circumstances, and because of the lack of any evidence establishing *464 that a reasonable officer would have stopped the defendant under such circumstances, we reverse appellant's conviction on the ground that the stop was pretextual. Kehoe (finding merit in pretextual stop argument and concluding it was unlikely a reasonable officer would have stopped vehicle solely for bent tag violation); Doctor (reasonable officer would have known defendant's vehicle was not in violation of laws relating to taillights, therefore, stop occasioned during drug interdiction program was pretextual); Lagree (officer's testimony did not establish that he stops people for driving one-half block without lights on, therefore, circumstances did not support conclusion that reasonable officer would have made the stop); Targaczewski v. State, 590 So.2d 542 (Fla. 2d DCA 1991) (court concluded stop was pretextual where officer testified he does not usually stop vehicles for failing to use turn signals and officers followed defendant for 11 blocks after violation before making stop); Mims v. State, 581 So.2d 638 (Fla. 5th DCA 1991) (concluding stop was pretextual where officers responded to anonymous tip that marijuana was being grown in hatchery, observed defendant standing near small fire for an hour, and subsequently stopped defendant even though they had no knowledge about fire laws).
REVERSED and REMANDED with directions that appellant be discharged.
WEBSTER, J., concurs.
MINER, J., dissents with written opinion.
MINER, Judge, dissenting.
Although I agree with the majority's conclusion that Deputy Sheriff Faircloth lacked reasonable suspicion of criminal activity to support the initial stop of appellant's vehicle, I would affirm the trial court's denial of appellant's motion to suppress.
At the suppression hearing, the state urged and the trial court adopted the Kehoe rationale  that Deputy Faircloth would have stopped appellant anyway to advise him not to drive his automobile on the beach. Unlike the majority, I find the record fully supportive of this conclusion.
Deputy Faircloth testified that the "policy" of the Sheriff's Department prohibited driving on the beach. The trial judge, as fact finder, was in the best position to evaluate the deputy's credibility as to the existence of this policy. The fact that the deputy had never before enforced the policy because he had never caught anyone driving on the beach does not in anywise undermine his testimony as to the existence of a no-beach-driving policy nor the trial court's conclusion that, given such a policy, a reasonable deputy would have stopped appellant for driving on the beach. I suggest that to adopt the majority's position is to embrace, by analogy, the somewhat simplistic proposition that a reasonable police officer would not stop a motorist for speeding if the officer had never before observed a speeding motorist and therefore had never before issued a citation for speeding.
In my view, the majority misses the mark by placing undue emphasis on Deputy Faircloth's lack of knowledge as to whether anyone had ever been charged with trespass for driving on the beach. Just how this lack of knowledge serves to erode his testimony relating to the existence of the Department's policy or the trial court's denial of appellant's motion to suppress is, at best, unclear. First, whether anyone had ever been charged with trespass for driving on the beach is immaterial to the inquiry at hand because the deputy did not state that the policy was to charge those who drove on the beach with trespass. He testified only that he would have stopped appellant's vehicle to advise appellant not to drive on the beach in the future. Moreover, as instructed by Brown v. State, 595 So.2d 270 (Fla. 2d DCA 1992), we know that the commission of a crime or traffic infraction is not a prerequisite to the determination of whether a reasonable officer would have stopped the vehicle absent the additional invalid reason. Secondly, Deputy Faircloth's lack of awareness as to whether other deputies had previously charged motorists with trespass for driving on the beach is subject to the reasonable *465 interpretation that no other deputy had ever caught anyone actually driving on the beach.
Equally flawed, in my view, is the majority's assertion that there would be no need to advise appellant to leave the beach because he was, in fact, leaving the beach when he was stopped. Such reasoning seems to suggest, again by way of analogy, that a reasonable officer would not stop a motorist observed speeding only moments before because that motorist was in the process of slowing his vehicle to a lawful speed. To the contrary, in the case at bar, I find it eminently reasonable that pursuant to existing policy,[1] an officer would stop a vehicle observed driving on the beach as that vehicle was departing the beach to inform the driver that such activity was prohibited and that he should refrain from doing so in the future.
A careful reading of the record below leaves wholly unshaken Deputy Faircloth's testimony that Departmental policy prohibits driving on the beach and that those doing so should be stopped and told to refrain from such activity. On this record, for the majority to conclude that "the officer's testimony does not provide record support for a determination that a reasonable officer would have stopped appellant under the circumstances" is to give no credence whatsoever to Deputy Faircloth's testimony. The trial court found Faircloth a credible witness and, under such circumstances, any rule of law that empowers an appellate court to substitute its judgment for that of the trial court on a matter of witness credibility is unknown to me.
Finally, I believe the majority misapplies the Kehoe test to the facts of this case. In a situation where a police officer claims to have stopped a vehicle for a minor traffic infraction, such as a broken taillight, and the state is unable to offer another reason to justify the stop at a suppression hearing, it must be asked whether a reasonable officer would have stopped the defendant for the proffered reason (the broken taillight). Under the circumstances of the case before us, however, where an officer stops a vehicle on the basis of an anonymous tip but offers in the alternative that a reasonable officer would have stopped the vehicle for another valid reason upon a chance encounter, the officer's actual reason for stopping the vehicle becomes immaterial to the inquiry.
Applying the Kehoe rationale to the instant facts, it was the state's burden at the suppression hearing to show that a reasonable officer would have stopped appellant to advise him that driving was not permitted on the beach, absent the additional, invalid reason which prompted Deputy Faircloth to stop appellant. If my analysis is correct, the following facts relied upon by the majority here are immaterial or not otherwise dispositive:
(1) The officer's acknowledged reason for stopping appellant's vehicle;
(2) The fact that the officer did not inform appellant that driving on the beach was prohibited (unnecessary in light of the officer's immediate suspicion when confronting him that appellant was operating his motor vehicle while under the influence of intoxicants);
(3) The fact that appellant was in the act of leaving the beach (because the trial court could have found that a reasonable officer would have stopped the vehicle anyway in order to deter such conduct in the future);
(4) The fact that the officer had never previously stopped anyone for driving on the beach (because the officer had not had occasion to do so);
(5) The fact that the deputy was unaware if any other deputy had previously charged motorists with trespass for driving on the beach (because the policy was to stop the vehicles, not to charge the drivers with trespass).
In Kehoe, Officer Dusenbery admitted that he stopped the vehicle on the basis of instructions received from fellow officers who suspected criminal activity. His admission notwithstanding, the officer offered the alternative reason that he *466 stopped the car because of a bent license tag. The supreme court concluded it to be unlikely that a reasonable officer would have stopped the vehicle solely for the bent license tag. In the case at hand, Deputy Faircloth admitted that he stopped appellant because of a suspicion of drug activity. The state, however, satisfied its burden of showing that a reasonable officer would have stopped appellant upon a chance encounter solely for driving on the beach. This alternative reason, urged by the state at the suppression hearing and adopted by the trial court, supported the trial court's denial of appellant's motion to suppress. Accordingly, I respectfully dissent from the majority's conclusion to the contrary and would affirm defendant's conviction.
NOTES
[1] There is nothing whatever in the record to refute the existence of this policy.