613 So.2d 65 (1993)
Marvin SPRINGLE, Appellant,
v.
STATE of Florida, Appellee. Herman Wilson, Appellant,
v.
State of Florida, Appellee.
Nos. 91-2519, 91-2663.
District Court of Appeal of Florida, Fourth District.
January 13, 1993.
*66 Richard L. Jorandby, Public Defender, and Marcy K. Allen, Asst. Public Defender, West Palm Beach, for appellants.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Dawn S. Wynn, Asst. Atty. Gen., West Palm Beach, for appellee.
EN BANC
LETTS, Judge.
We consolidate these two cases because they are factually identical and raise the same issue.
The defendants, traveling in an automobile, were stopped for speeding on I-95. It is conceded that without articulable suspicion, they were asked to consent to a search of themselves and their vehicle and were requested to sit in the back of the police vehicle "for their own safety" while the consented-to search (which proved fruitless) was conducted.
Prior to the request that the defendants sit in the back of the patrol car, the police had activated a recording device therein for the admitted, express purpose of recording any conversation between the defendants while they supposed themselves to be alone. When the officers played the tape, they overheard the defendants exulting that the search would prove fruitless because the offending cocaine together with a hat had been thrown out of the window before they were stopped. The trial judge denied the motion to suppress. We reverse.
The initial stop was made because the defendants' vehicle was clocked at 73 m.p.h. in a 65 m.p.h. zone. The public defender argues that the stop was pretextual because of the following factors: the officers had a drug dog with them and no radar gun, the officers only issued a warning for the speeding offense, and, most importantly, the officers admitted that their main purpose, if they gained consent, *67 was to pat-down the defendants, search the car, and secretly record the defendants' conversation, if any, in the police vehicle. To bolster this pretextual argument, the public defender cites Kehoe v. State, 521 So.2d 1094 (Fla. 1988). However, in Kehoe, the traffic stop was for a bent license plate tag, still legible and not noticed to be defective until after the stop. At bar, the defendants were exceeding the speed limit by 8 m.p.h. If the speed limit is 65 m.p.h., then a stop is lawful at any speed in excess of that figure. See State v. Leyva, 599 So.2d 691 n. 5 (Fla.3d DCA 1992). Thus, we hold that the stop here was not improper, and make note that, under Kehoe, a non-pretextual stop is not rendered invalid because the officers in reality have another purpose in mind. The test is "whether a reasonable officer would have stopped the car absent an additional invalid purpose." Kehoe at 1096. Applying that test to the facts of this case, we believe it would be entirely reasonable for a police officer to stop an automobile traveling at 8 m.p.h. in excess of the speed limit. An even more recent pronouncement on this traffic infraction issue was discussed in Doctor v. State, 596 So.2d 442 (Fla. 1992), but the rule of Kehoe was neither diluted, nor receded from, because the facts in Doctor (a cracked taillight) revealed no "violation of the law."
The foregoing analysis is not the end of this matter, however, under the particular attendant facts. When the defendants were ordered to sit in the back of the police vehicle for their own safety, they were not free to leave, as the trial court here correctly found. The raised windows could not be opened from the inside, nor could the closed doors, and there was a cage between the front and back seats that totally prevented egress. In effect, the defendants were incarcerated without probable cause, or even articulable suspicion, to suppose they possessed, or were dealing in, contraband. We hold this incarceration was tantamount to an illegal seizure under United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) and its progeny. The circumstances equate to a discovery of evidence, after an illegal seizure, which evidence constitutes the fruit of a poisonous tree. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
Turning to the question of whether there was an expectation of privacy regarding the defendants' oral communications, we begin by recognizing the general rule that there is normally no such expectation in a police car. Brown v. State, 349 So.2d 1196 (Fla. 4th DCA 1977), cert. denied, 434 U.S. 1078, 98 S.Ct. 1271, 55 L.Ed.2d 785 (1978); DiGuilio v. State, 451 So.2d 487 (Fla. 5th DCA 1984), approved and remanded, 491 So.2d 1129 (Fla. 1986); State v. McAdams, 559 So.2d 601 (Fla. 5th DCA 1990). However, those cases involve persons who had already been placed under arrest. The question before us now is whether there is an expectation of privacy in a police vehicle if neither probable cause to arrest nor articulable suspicion is present. We have not discovered a Florida case on this precise point, but there are cases which suggest that an expectation of privacy may arise if law enforcement engages in conduct calculated to give the suspects the illusion that their conversation is private. State v. Calhoun, 479 So.2d 241 (Fla. 4th DCA 1985), was not an automobile case but the opinion contains the following language written by Chief Justice Barkett:
The facts of this case reveal that the defendant had a clear expectation of privacy because such an expectation was deliberately fostered by the police officers.
Clearly in Calhoun, the officers openly fostered the expectation because in response to the defendant's request to talk with his brother "privately," the officers left the room as if to foster that privacy. The officers' activities in the case at bar were not that explicit. The words "private or privacy" were never used and all that the officers did was persuade the defendants to sit in the back of the police car for their own safety. Nonetheless, as the officers freely admitted, their intent was also to encourage incriminating conversation that the defendants thought would not be overheard. The defendants, of course, had *68 no idea their conversation was being secretly recorded. Shut alone in the police car behind closed doors and raised windows, the defendants obviously subjectively thought their conversation was private otherwise they would never have voiced the remarks that occasioned their downfall. However, as first enunciated in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), there is more to the right of privacy issue than subjective expectation. The Florida Supreme Court in State v. Inciarrano, 473 So.2d 1272, 1275 (Fla. 1985), pointed out that this expectation of privacy does not contemplate merely subjective expectation on the part of the person uttering the oral communication but also requires that expectation to be reasonable. Continuing on with the definition of reasonable expectation, the Inciarrano court opined that the expectation must be one that society is reasonably prepared to recognize.
As we have already said, we certainly agree there was a subjective expectation of privacy in the case before us. However, we must also decide if it is one society would recognize as reasonable. We believe society would do so under the facts of this case. When the police offer succor and shelter to Florida citizens, neither under arrest nor even articulable suspicion, we believe that the democratic society in which we live would expect that its conversations not be secretly recorded by law enforcement. See Article 1, sections 12 and 23, Florida Constitution. Having found a reasonable expectation of privacy, it necessarily follows that what transpired sub judice was in violation of section 934.03, Florida Statutes (1991), and consequently, the evidence derived therefrom is inadmissible under section 934.06, Florida Statutes (1991).
We conclude by stressing that the officers here involved were forthright and candid about their actions and intentions. It is clear they believed they were acting within the law and perhaps our supreme court will agree with them. Accordingly, and believing this matter to be of far reaching and great public importance, we certify two questions to the Florida Supreme Court:
(1) WAS THE PLACING OF THE DEFENDANTS IN THE LOCKED POLICE VEHICLE A SEIZURE UNDER THE FACTS OF THIS CASE; and
(2) WOULD SOCIETY CONCLUDE THAT THE EXPECTATION OF PRIVACY, UNDER THE FACTS PRESENTED, WAS REASONABLE.
REVERSED.
GLICKSTEIN, C.J., and ANSTEAD, HERSEY, DELL, GUNTHER, STONE, WARNER, POLEN and FARMER, JJ., concur.
GARRETT, J., recused.