DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Appellant,

v.

**TYRONE JENNINGS,**
Appellee.

No. 4D15-993

[April 6, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John Patrick Contini, Judge; L.T. Case No. 14-005208CF10A.

Pamela Jo Bondi, Attorney General, Tallahassee and Melanie Dale Surber, Assistant Attorney General, West Palm Beach, for appellant.

Carey Haughwout, Public Defender and Karen E. Ehrlich, Assistant Public Defender, West Palm Beach, for appellee.

PER CURIAM.

The State appeals an order granting defendant/appellee's motion to suppress in a criminal case. In his motion, appellee contended that he had been stopped with no well-founded suspicion of criminal activity. There was a hearing on the motion at which four police officers testified. The trial judge granted the motion "after carefully considering and weighing the testimony and credibility of all of the respective witnesses." On this appeal, although we review legal conclusions *de novo*, we "defer to the trial court's factual findings and interpret the evidence, reasonable inferences, and deductions derived from the evidence in a manner most favorable to sustaining the trial court's ruling." *Poliar v. State*, 898 So. 2d 1013, 1014 (Fla. 4th DCA 2005). Deferring to the trial judge's evaluation of credibility, we affirm the order granting the motion to suppress.

CIKLIN, C.J., and GROSS, J., concur.
FORST, J., dissents with opinion.

FORST, J., dissenting.

I respectfully dissent.  The salient testimony from the first officer to make contact with appellee ("the Officer") is that he was dispatched to respond to a robbery in the vicinity where he first spotted appellee's vehicle.  As he followed the vehicle, he saw that the driver turned off the vehicle's headlights while the vehicle was still in motion on the roadway.  The vehicle then pulled into a driveway.  Appellee exited the vehicle and began to walk away.  The Officer identified himself as a police officer and told him to stop.  Appellee continued to walk away, and subsequently began to run.  He was ultimately apprehended by one of the three additional officers who had responded to a call for assistance by the Officer.  At the hearing on appellee's motion to suppress, the Officer testified that he personally observed the traffic offense of driving with no headlights while the vehicle was in motion and it was dark out.  Appellee was charged with several offenses, including a traffic citation for "headlights."

There was no evidence offered in contradiction to the Officer's testimony that appellee was driving without headlights.  Nonetheless, as noted in the majority opinion, the trial court granted appellee's motion to suppress physical evidence obtained after a search.  The sole explanation for this ruling was set forth orally as follows:

> Notwithstanding the doctrines and holding of Proctor [apparently referencing *State v. Proctor*, 161 So. 3d 409 (Fla. 5th DCA 2014)], the Court having heard the evidence of the four involved officers and the argument of respective counsel for both the State of Florida and the defense, and after carefully considering and weighing the testimony and credibility of the four officers involved, I find as a matter of fact and law, that the State of Florida has not met it's [sic] required burden of establishing the requisite probable cause in the arrest and search of the defendant, the initial stop as well and/or the search and seizure in connection therewith.

It is possible that the trial court believed the stop was a "pretextual stop."  In *Kehoe v. State*, 521 So. 2d 1094 (Fla. 1988), *abrogated by Dobrin v. Fla. Dep't of Highway Safety & Motor Vehicles*, 874 So. 2d 1171 (Fla. 2004), *cert. denied*, 543 U.S. 957 (2004), and in *State v. Daniel*, 665 So. 2d 1040 (Fla. 1995), *receded from by Holland v. State*, 696 So. 2d 757 (Fla. 1997), the Florida Supreme Court responded to situations "[w]hen the police realize that they lack a founded suspicion [and therefore] sometimes attempt to justify a stop on some obscure traffic violation." *Kehoe*, 521 So. 2d at 1096.  The Court held in *Kehoe* that in such cases, "[t]he state must show that . . . a reasonable officer would have stopped the vehicle absent

an additional invalid purpose." *Id.* at 1097. In *Daniel*, the Court narrowed its holding in *Kehoe*, stating that "the reasonable officer test applies exclusively where a stop is justified solely by a minor infraction, generally those that are purely regulatory in nature and that do not address conduct potentially harmful to other persons or property." *Daniel*, 665 So. 2d at 1043.

There would be a problem with this *Kehoe/Daniel* approach if that is what the trial court relied upon. It is no longer good law. Pursuant to the decision of the United States Supreme Court in *Whren v. United States*, 517 U.S. 806 (1996), even if the Officer planned on stopping appellee's vehicle for another reason (the Officer was responding to a BOLO in conjunction with a robbery), "[t]he actual subjective motivation of the individual officer involved is irrelevant and should not factor into an ordinary probable-cause Fourth Amendment analysis." *Proctor*, 161 So. 3d at 411 (citing *Whren*, 517 U.S. at 813). The Florida Supreme Court has accepted that the *Whren* objective test overrules the *Kehoe/Daniel* approach. *Holland v. State*, 696 So. 2d 757, 759 (Fla. 1997) (holding that the subjective intent of the officer is no longer determinative; "[w]hen applying the objective test, generally the only determination to be made is whether probable cause existed for the stop in question" and that, per *Whren*, "a violation of traffic law provided sufficient probable cause to make the subsequent search and seizure reasonable"); *see also* 11 Fla. Prac., DUI Handbook § 4:19 (2015-2016 ed.) ("The current test for determining whether a stop for a traffic violation is valid simply requires a determination of whether there is probable cause. This is the 'could stop' test.").

An observation by the Officer that the appellee's headlights had been turned off while the car was still moving on the road, at night, is sufficient to satisfy the "could stop"/objective test. Granted, "'[j]udges . . . are not wallflowers or potted plants,' and a trial court is not required to accept testimony that is clearly incredible or unreliable." *O.I.C.L. v. Dep't of Children & Families*, 169 So. 3d 1244, 1251 (Fla. 4th DCA 2015) (quoting *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1045 (7th Cir.1988)), *review granted sub nom. O.I.C.L. v. Fla. Dep't of Children & Families*, SC15-1570, 2015 WL 6854614 (Fla. Oct. 30, 2015). In the instant case, there is nothing in the record, in the brief decision of the trial court, or in the similarly brief opinion of the majority, that indicates why the Officer's unrebutted testimony that he observed a traffic violation prior to the stop should be deemed untrustworthy, let alone "clearly incredible or unreliable." Thus, I am unable to join the majority; I would instead reverse the trial court's grant of the appellee's motion to suppress.

\*     \*     \*

*Not final until disposition of timely filed motion for rehearing.*