595 So.2d 1029 (1992)
STATE of Florida, Appellant,
v.
Lillas Ivory LAGREE, Appellee.
No. 91-623.
District Court of Appeal of Florida, First District.
March 9, 1992.
Rehearing Denied April 8, 1992.
Robert A. Butterworth, Atty. Gen., Charlie McCoy, Asst. Atty. Gen., Tallahassee, for appellant.
Nancy A. Daniels, Public Defender, Steven A. Been, Asst. Public Defender, Tallahassee, for appellee.
SMITH, Judge.
The state has appealed an order suppressing evidence in appellee's prosecution for possession of illegal contraband. We affirm.
The order which the state has asked us to review provides in pertinent part:
1. On October 28, 1990 at approximately 12:22 A.M. Deputy Greg Lancaster of the Escambia County Sheriff's Department observed an automobile pull out of *1030 the parking lot of the Ebony Club, a Pensacola nightclub, and pull onto Haynes Street, the street running in front of the Ebony Club. The vehicle travelled to the end of the block on which the Ebony Club is located, a distance of slightly over 1/2 a small city block, to Crescent Street, where it went a short distance to Roosevelt Street and again turned. Deputy Lancaster was travelling on Haynes Street at the time the vehicle exited the Ebony Club parking lot and observed the vehicle did not have its headlights on until it began the turn onto Crescent, at which time the headlights were turned on. After the vehicle had travelled down Crescent and begun the turn onto Roosevelt Street, Deputy Lancaster activated his patrol car's lights and pulled the vehicle over in order to issue a traffic citation or a warning for the offense of driving without headlights turned on. The vehicle's windows were tinted and Deputy Lancaster did not see the occupants enter the vehicle. He did not observe anything "suspicious" before stopping or when stopping the vehicle.
2. The motor vehicle was operated by Beverly Thompson, who exited the vehicle to speak with Deputy Lancaster. Ms. Thompson did not have her drivers license with her, but after obtaining some information from her, Deputy Lancaster called on his radio to verify the drivers license information and was satisfied that she should not receive a citation for not having a drivers license. He did issue her a written warning notice for not having her lights on at around 12:30 A.M., approximately eight minutes after the initiation of the traffic stop.
3. Deputy Greg Lancaster is a patrol officer for the Escambia County Sheriff's Department who performs drug interdiction. In accordance with his training he inquired of Ms. Thompson whether she had ever been arrested for drug charges, and she answered she had been arrested for drugs approximately three years ago. Deputy Lancaster testified that the Ebony Club is in an area known for drug activity. Additionally he stated, "After she said she had previously been arrested for possession of cocaine, now, looking back, considering the fact she pulled out from the Ebony Club, I had reasonable suspicion [to search her vehicle]." At the time he was concluding the issuance of the warning citation Deputy Lancaster called for assistance from officer Enderson and his canine to perform a "sniff search" around the exterior of the vehicle. It took officer Enderson approximately 10 minutes to arrive at the scene. This was approximately 20 minutes following the initial stop for the traffic violation.
4. After Deputy Lancaster had written Ms. Thompson the warning citation he asked her for permission to search her car but he did not tell her she was free to go. Ms. Thompson said the car belonged to her mother and asked to talk to her uncle, who was occupying the front passenger seat of the vehicle at the time. However, Deputy Lancaster refused to allow her to talk to him. Ms. Thompson said she did not think she should give her consent because it was her mother's car.
5. Deputy Lancaster spoke directly with Ms. Thompson's uncle and inquired if he minded if a search was made of the car, and the uncle told him it would be all right. Deputy Lancaster then showed Ms. Thompson a consent to search form and offered to read it to her. She replied, "I can read," and then took approximately three minutes to review the form. She then signed the consent form at about the time Deputy Enderson arrived with the canine, and Deputy Lancaster advised Enderson that the driver had consented to a search.
6. During the initial detention the defendant, Lillas Ivory Lagree, who had been a passenger in the right rear seat of the vehicle was "acting very nervous" and got out of the car two or three times, and Deputy Lancaster asked him to please get back in the car, apparently for safety reasons. When the consent was signed and Deputy Enderson arrived with the canine, the officer had all three occupants exit the vehicle.

*1031 7. The canine alerted to the right door of the car during the walk-around to indicate the presence of a drug smell. Deputy Enderson then placed the dog in the car and the dog indicated a "bite and scratch" alert to the right rear seat denoting the presence of a drug smell, however, no drugs were found in the vehicle. Deputy Enderson then discovered a loaded 9 millimeter handgun under a floor mat on the floorboard of the car pushed up under the right front seat of the car. Additionally, Deputy Enderson discovered a small, hollow metal pipe on the ground next to the edge of the car where the dog had alerted. The pipe had some sand over the top of it and there was loose sand on the side of the road where the car pulled off. Deputy Enderson presented the handgun to Deputy Lancaster who then searched the occupants of the vehicle. While searching Lagree, Deputy Lancaster felt a long object and upon retrieving it recognized it to be a plastic, fold-up holder for a razor blade, containing a white powdery substance. He performed a field test and determined that it tested positive for the presence of cocaine. He then arrested the defendant, Lagree.
8. Ms. Thompson stated that during the time she was detained by Deputy Lancaster she felt she was not free to leave and that if she tried to leave Deputy Lancaster would arrest her. There is conflicting testimony as to whether Deputy Lancaster told her that if she did not give her consent to search the car he would arrest her for driving with a suspended license. Deputy Lancaster denies telling her this.
DEFENDANTS STANDING
A mere passenger normally does not have standing to contest the search of a car in which he is riding. Amoss v. State, 547 So.2d 716 (Fla. 1st DCA 1989). "Unquestionably, stopping an automobile and detaining its occupant constitutes a seizure within the meaning of the Fourth Amendment to the U.S. Constitution," and, concurrently, within the purview of Article I, Section 12, of the Florida Constitution. Lagree clearly has standing to object to the stopping of the vehicle in which he was riding since that stop resulted in his seizure. Wulff v. State, 533 So.2d 1191 (Fla. 2d DCA 1988); State v. Montano, 527 So.2d 916 (Fla. 3rd DCA 1988); and Adams v. State, 523 So.2d 190 (Fla. 1st DCA 1988). Thus, Lagree does have "standing" to assert the stop of Ms. Thompson's vehicle, in which he was riding, was unlawful or pretextual. Additionally, assuming that the traffic stop was lawful, the defendant has "standing" to contest the legality of his continued detention following the issuance of the warning citation to the vehicle's driver. Castillo v. State, 536 So.2d 1134 (Fla. 2d DCA 1988).
TRAFFIC STOP
The stop of Ms. Thompson's car by Deputy Lancaster was an invalid pretextual stop. Although Deputy Lancaster routinely stops vehicles which are being illegally operated without headlights and issues warning citations to their drivers, in order to evaluate the Fourth Amendment implications of his actions in this case it is necessary to make an objective assessment of them in light of the facts and circumstances confronting him at the time of the stop. Kehoe v. State, 521 So.2d 1094 (Fla. 1988). No evidence was presented to indicate the presence of other traffic on the roadway or the existence of endangerment to pedestrians or property resulting from Ms. Thompson's brief travels without her headlights on. She pulled onto a highway in front of a business and travelled just more than 1/2 a short city block, apparently without interfering with any other vehicular or pedestrian traffic, and turned on her headlights as she began to turn onto another street. Considering the nature of Deputy Lancaster's inquiry of the driver and the circumstances and length of the detention and his acknowledgment that the point of origin of the vehicle was in an area known for high-drug activity, it is evident the State failed to demonstrate that Deputy Lancaster was acting as a reasonable officer in stopping Ms. Thompson's vehicle, absent an invalid *1032 purpose, and, therefore, that this stop was not pretextual... .
The order granting the motion to suppress is presumptively correct and this reviewing court should interpret the evidence and reasonable inferences and deductions drawn therefrom in a manner most favorable to sustaining the trial court's ruling. Medina v. State, 466 So.2d 1046, 1049-1050 (Fla. 1985); Johnson v. State, 438 So.2d 774, 776 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984). To overcome the pretextual challenge, the state was required to show that under the facts and circumstances a reasonable officer would have stopped the vehicle absent an additional invalid purpose. Kehoe v. State, 521 So.2d 1094, 1097 (Fla. 1988). While Deputy Lancaster's testimony establishes that he stops people who drive without their lights, it does not establish that he stops people for only going one-half block without their lights, absent an additional invalid purpose. We agree with the trial court's conclusion that pulling out of a parking lot and driving one-half of a small city block before putting headlights on is not such a circumstance that it can be assumed, without proof, that a reasonable officer would make the stop, when there was no proof that the area was not well-lit, and no proof that the brief period of driving without lights on caused any danger.
Accordingly, the trial court's order suppressing evidence is AFFIRMED.
ZEHMER and ALLEN, JJ., concur.