692 So.2d 237 (1997)
Geoffrey Hall ANDERSON, Appellant,
v.
STEVEN R. ANDREWS, P.A., Appellee.
No. 94-3148.
District Court of Appeal of Florida, First District.
April 23, 1997.
*238 Sandra E. Allen, Law Firm of Allen & Gonzalez-Neimeiser, P.A., Tallahassee, for Appellant.
Steven R. Andrews, The Law Offices of Steven R. Andrews, P.A., Tallahassee, for Appellee.
JOANOS, Judge.
Appellant Geoffrey Hall Anderson challenges an order granting final summary judgment in favor of appellee/defendant in a legal malpractice action. We affirm in part and reverse in part.
Appellant's legal malpractice complaint pertains to two civil rights actions which appellant previously filed in the federal district court in Pensacola. Appellant prosecuted the federal claims as a pro se litigant for approximately two years before retaining appellee. On November 14, 1990, appellee agreed to represent appellant in connection with the two pending federal lawsuits: federal case number 88-30430, the "Pittman action"; *239 and federal case number 90-30002, the "Harkins action". At the time appellee was retained, an answer or opposing affidavit was due to the defendants' joint motion for summary judgment in federal case number 88-30430, filed October 3, 1990.[1] Appellee filed a motion to extend the time for completing discovery and for continuance of the pre-trial conference, and a motion for enlargement of time to file a supplemental rebuttal memorandum and opposing affidavits. However, appellee did not file an answer or an affidavit to counter defendants' motion for summary judgment and their supporting affidavit. The federal judge denied the motion to extend the time for discovery, but enlarged the time for filing a supplemental rebuttal memorandum and opposing affidavits until November 28,1990, i.e., a one-day extension of time.
On November 29, 1990, at the pre-trial hearing in federal district court in Pensacola, appellee advised the judge that he did not receive the one-day extension of time until 3:00 p.m., November 28, 1990. The federal judge announced his intention to rule upon the motion for summary judgment at that time, after affording appellee an opportunity to present oral arguments in opposition to defendants' joint motion. Subsequently, the federal judge issued an order granting the defendants' motion for summary judgment in case number 88-30430, the Pittman case. The order granting summary judgment in favor of the highway patrol troopers stated in part:
In opposition to defendants' motion for summary judgment, plaintiff has presented no evidence or affidavits supporting his allegations. Defendants, however, have filed supporting affidavits....
....
Plaintiff has failed to create a genuine issue of fact with respect to his civil rights claim stemming from his arrests for felony witness tampering. Plaintiff bears the burden of establishing at trial that the defendants violated his civil rights. Because plaintiff has failed to submit any evidence whatsoever on an essential element of his claim, defendants are entitled to summary judgment.
Four months later, on April 22, 1991, the federal judge granted defendants' motion for summary judgment in case number 90-30002, the Harkins case, and awarded defendants their full attorneys' fees incurred in defending that action. In a letter dated May 16, 1991, appellee advised appellant that he would not file a notice of appeal in the Harkins case.
Thereafter, appellant filed the pro se complaint here at issue, alleging breach of contract and professional negligence counts with respect to both federal civil rights lawsuits. Attached to the complaint were copies of two separate documents indicating appellee's authority to represent appellant in the two separate federal civil rights cases.
In response, appellee filed a motion for summary judgment together with his sworn affidavit. As grounds for summary judgment, appellee alleged appellant's claims related to a 1983 arrest were barred by the statute of limitations, and appellant's no contest plea admitted the factual basis for the charge and the arrest. Appellee further alleged that appellant could not prevail with respect to arrests in 1986 and 1987, and charges of tampering with a witness, because appellant entered a plea of no contest to those charges. According to the summary judgment motion, appellee was unable to file affidavits opposing the motion for summary judgment in the underlying lawsuit, because he did not receive the order granting an additional day to file an affidavit until after the time for filing had passed. Appellee's motion for summary judgment made no reference to the claims raised in the Harkins action, federal case number 90-30002.
Appellant filed a pro se affidavit in opposition to appellee's motion for summary judgment. Among other things, appellant alleged that he retained appellee fifteen days prior to the summary judgment hearing; appellee chose to represent appellant, and insisted on written contracts; and appellee promised to file all necessary documentation before the *240 hearing. Appellant's affidavit further stated that appellee filed motions to extend time, notice of voluntary dismissal as to some named defendants, a memorandum on disputed issues of law, jury instructions, verdict forms, pre-trial stipulation, a compilation of attorney time, and an affidavit of a good faith search. However, appellee failed to file an affidavit to raise one issue of fact so as to defeat the motion for summary judgment, failed to file any of the exhibits listed in the pre-trial stipulation, and failed to file a response to the motion for summary judgment.
The trial court granted appellee's motion for summary judgment as to all counts. The order indicates that the trial court considered appellant's pro se affidavit and the documents which appellant filed, together with certain listed materials filed by appellee.[2] The trial court found that in order to prevail on his claim for legal malpractice, appellant had to be able to prove in federal court that the state criminal charges terminated in his favor. The trial court concluded as a matter of law that appellant failed to show that, but for his attorney's negligence, he could have prevailed in federal court with respect to his civil rights claims. The court then granted summary final judgment in favor of appellee.
The plaintiff in a legal malpractice action must prove: (1) the employment of the attorney, (2) the lawyer's neglect of a reasonable duty, and (3) attorney negligence which was the proximate cause of loss to the client. Fernandes v. Barrs, 641 So. 2d 1371, 1374 (Fla. 1st DCA 1994). See also Freeman v. Rubin, 318 So.2d 540, 542-543 (Fla. 3d DCA 1975).
Appellant in this case presented proof of the first element, i.e., employment of the attorney. Appellee's answer admitted the parties entered into two written contingency fee contracts, wherein appellee agreed to represent appellant in the two civil actions designated on the face of the contracts and the complaint.
Appellant also presented proof of the second element, the lawyer's neglect of a reasonable duty. The record reflects that appellee failed to file a notice of appearance in the Harkins action, and failed to take any action to prosecute the claims presented in that complaint. Due to appellee's failure to file an appearance, appellant incurred the ire of the federal judge in connection with the Harkins case by failing to respond to the trial judge's orders. Appellant referred the judge's orders to his attorney, apparently without knowledge that appellee never filed a notice of appearance in the case. After summary judgment was entered for the Harkins defendants, appellee notified appellant in writing that he did not intend to file a notice of appeal in the case, thereby demonstrating that he recognized his obligation to perform reasonable duties in connection with the Harkins case.
With regard to the Pittman case, federal case number 88-30430, the record indicates that appellee accepted the representation fifteen days before the summary judgment hearing, with knowledge that a response to the motion was due. Appellee filed several motions requesting extensions of time, with limited success, i.e., he obtained a one-day extension. Federal Rule of Civil Procedure 56(c) states in part:
(c) Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits....
Thus, under the rule, appellee could have filed opposing affidavits as late as November 28, 1990, before the scheduled hearing on November 29,1990.
To maintain an action under 42 U.S.C. § 1983, "a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." Eagleston v. Guido, 41 F.3d 865, 876 (2d Cir.1994), cert. denied, ___ U.S. ___, 116 S.Ct. 53, 133 L.Ed.2d 18 (1995). See also Whiting v. *241 Traylor, 85 F.3d 581, 583 (11th Cir.1996)("to state a section 1983 claim, a plaintiff must point to a violation of a specific federal right"); N.A.A.C.P. v. Hunt, 891 F.2d 1555, 1562 (11th Cir.1990); Arnold v. Board of Educ. of Escambia County, Ala., 880 F.2d 305, 310 (11th Cir.1989).
Appellant's constitutional claims were based on allegations of a continuing pattern of stops, arrests, and charges unsupported by probable cause. Among other things, appellant alleged (and the record indicates) that although he had a valid Florida tag and a valid Tennessee driver's license, he was arrested for driving while license suspended.[3] Appellant further alleged he had his Florida license reinstated, and showed his valid driver's license to Sergeant Pittman, in an effort to better his relations with law enforcement personnel. Within a short time, appellant was stopped and again charged with driving while license suspended. The record reflects that after reinstatement of appellant's Florida license, it was suspended due to three unpaid Tennessee traffic citations.[4] Appellant alleged that during the period that his Florida license was suspended, he was charged with tampering with a witness "based upon the fact that [he] was riding his bicycle in his own neighborhood in which Trooper Griffith also lived."[5] According to appellant, at the trooper's insistence, he [appellant] was summoned to the sheriff's department for questioning about slashed tires,[6] and he was arrested in a private residence without a warrant.
The temporary detention of a motorist is valid under the Fourth Amendment where the officer has probable cause to believe the motorist has violated a traffic law, even if a reasonable police officer would not have detained a motorist for such a violation. Whren v. United States, ___ U.S. ___, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The test under Whren is whether an officer could have stopped the vehicle for a traffic infraction. See Petrel v. State, 675 So.2d 1049 (Fla. 4th DCA 1996). If an objective view of the circumstances would support a finding of probable cause, the officer's actual motives are irrelevant. Scott v. U.S., 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978); Criss v. City of Kent, 867 F.2d 259, 262 (6th Cir.1988). In other words, an officer's ulterior motive will not impair the validity of the detention. Petrel.
The trial court in this legal malpractice suit found the essence of appellant's federal claims was that he was arrested without probable cause and he was the victim of malicious prosecution. The final summary judgment in this case was based upon the trial court's determination that appellant could not prove, as a necessary predicate to success in his malicious prosecution claims, that the state court proceedings terminated in his favor.
Where the contested seizures are pursuant to legal process, the most closely analogous tort seems to be malicious prosecution. Whiting v. Traylor, 85 F.3d 581, 584 (11th Cir.1996); Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 3 (1st Cir.1995). Therefore, characterizing a claim as one for "malicious prosecution" can constitute a description of a legitimate section 1983 claim. Whiting, 85 F.3d at 584. "At common law, a plaintiff had no malicious prosecution claim until the underlying proceeding was terminated in his favor." Id. at 585.
*242 As a general rule, a plea of nolo contendere has been given no evidentiary effect beyond the action in which it was entered. Wyche v. Florida Unemployment Appeals Com'n., 469 So.2d 184, 186 (Fla. 3d DCA 1985); Holland v. Florida Real Estate Com'n., 352 So.2d 914 (Fla. 2d DCA 1977). This is because the plea represents "only an unwillingness to contest a charge." Vinson v. State, 345 So.2d 711, 714 (Fla.1977). See also Chesebrough v. State, 255 So.2d 675 (Fla.1971), cert. denied, 406 U.S. 976, 92 S.Ct. 2427, 32 L.Ed.2d 676 (1972)(plea of nolo contendere may not be used on civil suit as admission of facts charged in complaint); Fisher v. Wainwright, 584 F.2d 691 (5th Cir.1978)(plea of nolo contendere may not be used in subsequent civil litigation). "In the eyes of the law a person is not deemed to have committed a crime until an adjudication of guilt has been entered against him." Holland v. Florida Real Estate Com'n., 352 So.2d at 916. See also Rifkin v. Florida Real Estate Com'n., 345 So.2d 349 (Fla. 4th DCA 1977).
The record in this case reveals that appellant pled nolo contendere to the charges underlying his civil rights complaints, and adjudication of guilt was withheld. Since appellant was not adjudicated guilty in the state circuit court proceedings, the cases which hold that a conviction establishes the existence of probable cause may not be applicable. Assuming, without deciding, that appellant's no contest pleas would not bar the section 1983 action related to the underlying charges, we are unable to determine whether appellant could establish a Fourth Amendment violation with respect to the investigatory stops preceding the arrests for driving while license suspended. Although appellant filed a pro se affidavit alleging various facts related to his underlying civil rights claims, appellant failed to indicate the nature of the factual allegations which his attorney could have presented in an affidavit to counter the affidavits filed by the Pittman defendants. Absent such showing, we are unable to make a determination that the attorney's alleged negligence was the proximate cause of loss to appellant with respect to the Pittman action.
The grant of summary judgment in this case does not set forth a separate finding with regard to the breach of contract count in Pittman, and the court seemingly did not rule upon the Harkins case. The record demonstrates that appellee entered into an agreement to represent appellant in the Harkins case, but failed to file a notice of appearance in that cause. The federal court's findings in Harkins, together with the record submitted by the parties, suggests appellee's negligence was in part the proximate cause of the sanctions imposed against appellant in connection with the Harkins action.[7]
A client has a cause of action against an attorney who neglects to perform the services he agreed, or implicitly agreed, to perform when he accepted the employment. Dykema v. Godfrey, 467 So.2d 824, 825 (Fla. 1st DCA 1985). Appellee's agreement to represent appellant with respect to both federal civil rights actions constituted an implicit agreement to file a notice of appearance, and to prosecute the cases to a conclusion. The record indicates that appellant relied upon appellee to prosecute both claims, yet appellee took no action with respect to the Harkins case. On the facts presented, it would be inappropriate to assume that appellant would have been unable to establish a violation of a protected right if the Harkins case had been presented properly. If appellee believed the case was meritless, he had an obligation to so advise appellant, and to further advise that he would not file a notice of appearance with respect to that case.[8] The record shows the Harkins case was not developed by either appellant or appellee.
In summary, as to the Pittman case, assuming, without deciding, that appellant's no contest pleas and withheld adjudication of guilt could be viewed as a termination in his favor, it appears appellant would, nevertheless, *243 be unable to show that the troopers' conduct amounted to a violation of a specific constitutionally protected right or privilege. See Whren. Therefore, we affirm that part of the grant of summary judgment which pertains to appellee's alleged legal malpractice in connection with the Pittman action, federal case number 88-30430.
As to the Harkins case, the existence of the first two elements necessary to a legal malpractice claim is clear on the face of the record. At a minimum, it seems, there is evidence that the attorney's neglect of a reasonable duty, i.e., the attorney's failure to file a notice of appearance or to withdraw in accordance with the contract, was the proximate cause of the imposition of sanctions against appellant in the Harkins case. The summary judgment in Harkins was issued four months after the summary judgment in Pittman, thus time constraints were not a problem. Since the trial court did not address the Harkins claims, we decline to speculate whether the documents, depositions, and sworn statements raise a possibility that appellant could have prevailed on one or more of those claims, if the materials had been developed properly for trial. Rather, we reverse the grant of summary judgment as to the Harkins action, regarding federal case number 90-30002, because the record does not indicate whether the trial court considered the malpractice allegations with respect to that case.
Accordingly, we affirm the partial summary judgment as to the Pittman action. We reverse the summary judgment insofar as it purports to include the malpractice claims in the Harkins action, and remand for further proceedings as to that case.
WOLF and VAN NORTWICK, JJ., concur.
NOTES
[1] In federal case number 88-30430, appellant alleged several named Florida Highway Patrol Troopers violated his right to be free of unreasonable seizure. The case was designated "the Pittman case," in appellant's legal malpractice complaint.
[2] All of the materials listed in the trial court's order on appellee's motion for summary judgment pertain to federal case number 88-30430, the Pittman action. There is nothing in the order which suggests the trial court considered the Harkins action, federal case number 90-30002.
[3] The record indicates appellant's Florida driver's license was suspended about the time he finished college and moved to Louisiana and Tennessee  leaving numerous Florida traffic citations unpaid. Appellant said he was unaware that his Florida license had been suspended.
[4] Since Tennessee issued appellant a driver's license and took no action to suspend it at any time prior to these proceedings, appellant inferred that Okaloosa officers effected the suspension of his reinstated Florida driver's license based on traffic citations which the State of Tennessee had elected not to pursue.
[5] Appellant allegedly rode his bicycle on the street where Trooper Griffith lives with the purpose of intimidating the trooper, so he would not appear when appellant went to court on the driving with suspended license citation.
[6] Two tires of a car driven by a trooper's teenage daughter were punctured with a screwdriver. After summoning appellant to the sheriff's department for questioning, the matter was dropped.
[7] Appellant was ordered to pay defendants their full attorneys' fees incurred in defending that action.
[8] Each time appellant referred the federal court's orders to appellee, the federal court insisted appellant was acting pro se and threatened to impose sanctions against appellant for failure to respond to the court's orders.