718 So.2d 833 (1998)
The STATE of Florida, Appellant,
v.
Santiago O. HERNANDEZ, Appellee.
No. 97-2909.
District Court of Appeal of Florida, Third District.
August 5, 1998.
*834 Robert A. Butterworth, Attorney General, and Sandra S. Jaggard, Assistant Attorney General, for appellant.
Howard Sohn, Miami, for appellee.
Before GERSTEN, GREEN and SHEVIN, JJ.
GREEN, Judge.
The State of Florida appeals an order suppressing a firearm seized from a rental car in which appellee Santiago O. Hernandez was a passenger. Because we conclude that the police had probable cause to stop the car and Hernandez claimed no ownership interest in either the car or its contents, Hernandez lacked standing to contest the subsequent search of the car and seizure of the firearm. Accordingly, we reverse the order suppressing the firearm and remand for further proceedings.

I
On September 17, 1996, at approximately 9:15 a.m., Detectives Steven Dewey and Jose Esterella were travelling northbound in an unmarked police car. At that time, Hernandez was a passenger in a rented automobile which was being driven by one Jerry Dean Crespo, also in a northbound direction. The detectives noticed Crespo pull up behind them to proceed to the left turn lane. At that point, an individual towing a boat on a trailer travelling southbound passed Crespo's vehicle and turned into an open gas station and convenience store. The detectives observed Crespo make a hand gesture to Hernandez as both of them looked in the general direction of the boat, which at this point had pulled into the gas station and convenience store. The detectives then saw Crespo immediately make a left hand turn across the grassy median dividing the north and south bound lanes in violation of section 316.090, Florida Statutes (1995),[1] and pull into the parking lot of the gas station and convenience store.
The two detectives then made a U-turn and pulled into an adjacent shopping center parking lot located west of the gas station and convenience store. There they observed Hernandez exit the rental vehicle and walk to the west side of the convenience store near the car wash area. The driver, Crespo, then drove the car from the front of the convenience store to one of the gas pumps in the service station area. After exiting the vehicle, the detectives observed Crespo hand signal for Hernandez to return to the car. Upon Hernandez's return to the car, he entered the passenger's side and Crespo reentered the driver's side. The detectives then observed both Hernandez and Crespo lean forward in an apparent attempt to reach for something on the floor of the vehicle. Based upon these observations, the detectives made the decision to stop and question Crespo and Hernandez.
The detectives approached the vehicle and identified themselves as police officers and asked both Crespo and Hernandez to exit for the officer's safety. Detective Dewey took Hernandez to the trunk area of the vehicle while Detective Esterella questioned Crespo. Detective Esterella read Crespo his Miranda rights[2] and informed him that he had committed a traffic violation by crossing the grassy median. Crespo indicated that he did not care because he was operating a rental car. Detective Esterella then asked Crespo *835 why he was in the area. Crespo first stated that he was there to pick up Hernandez. He then stated that Hernandez had to use the restroom.
Detective Esterella then took Crespo over to the trunk area where Detective Dewey and Hernandez had been waiting and left Crespo there. Detective Esterella asked Hernandez to accompany him to another area in order to question him. Detective Esterella, after reading Hernandez his Miranda rights, asked Hernandez to explain his presence in the area. Hernandez responded that he had arrived at the gas station with his friend, Crespo. After concluding his questioning of Crespo and Hernandez, Detective Esterella conferred briefly with Detective Dewey. Both detectives testified at the suppression hearing that although Hernandez and Crespo were not placed under arrest, neither was free to leave.
As the two officers conferred they noticed that both Crespo and Hernandez, who had both been standing in the trunk area of the car, walked to reenter the car. The officers stopped them and Detective Esterella walked toward the front of the car. Detective Esterella then spotted a firearm protruding from under the driver's seat where the door had been left open and he informed Detective Dewey. The officers brought both Crespo and Hernandez back to the trunk area of the car where Detective Esteralla watched them while Detective Dewey went to retrieve the firearm. As Detective Dewey was retrieving the firearm from under the driver's seat, he spotted a firearm under the front passenger's seat, which he seized as well. Both Crespo and Hernandez were then arrested for carrying concealed firearms.

II
Thereafter, Hernandez was charged, by amended information, with possession of a firearm by a convicted felon, loitering and prowling and carrying a concealed firearm. Hernandez sought to suppress the use of the seized firearms. In his motion, Hernandez maintained that the police had illegally detained him and searched the car. Thus, he asserted that the firearms should be suppressed as the fruit of an illegal stop and search. The State countered that the stop of the car was legal by virtue of the driver's commission of the traffic infraction and that Hernandez lacked standing to contest the search of the car where he disclaimed any possessory interest in the car or its contents.
After an evidentiary hearing, the trial court granted Hernandez's motion and suppressed the use of the seized firearm as evidence. The trial court found that the police had no articulable suspicion of a crime being committed at the time they initially approached the two men and ordered them out of the car, given the officer's candid admission that they had no intentions of citing the driver for the commission of the traffic infraction. Thus, the court concluded that Hernandez was illegally detained when he was ordered from the car and as such, any subsequent search of the vehicle would be the fruit of this illegal detention.

III
On appeal, a trial court's factual findings on a motion to suppress are reviewable under a de novo standard. See Ornelas v. United States, 517 U.S. 690, 691, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Further, Florida courts are constitutionally required to interpret search and seizure issues in conformity with the Fourth Amendment of the United States Constitution as interpreted by the United States Supreme Court. See art. I, § 12, Fla. Const.; see also Perez v. State, 620 So.2d 1256, 1258 (Fla.1993); Bernie v. State, 524 So.2d 988, 991 (Fla.1988); Warren v. State, 701 So.2d 404, 406 (Fla. 1st DCA 1997). We find that the trial court erred as a matter of law in its determination that Hernandez was illegally stopped and ordered out of the car by the police. Because we find both the stop of the car and the request for Hernandez and the driver to exit the car to be valid, we conclude that, as a passenger, Hernandez lacked standing to challenge the subsequent search of the vehicle where he asserted no ownership or possessory interest in the car or its contents. Consequently, there was no need to address the legality of the search and Hernandez's motion to suppress should have been summarily denied.
*836 The United States Supreme Court has long since declared, as a general proposition, that a mere passenger of a vehicle lacks standing to contest a search of the vehicle which has been lawfully stopped. See Rakas v. Illinois, 439 U.S. 128, 148, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); see also Amoss v. State, 547 So.2d 716, 717 (Fla. 1st DCA 1989). A passenger, however, does have standing in one of two situations: (1) where the vehicle was unlawfully stopped, see Fontana v. State, 581 So.2d 585, 585 (Fla.1991); Wulff v. State, 533 So.2d 1191, 1191-92 (Fla. 2d DCA 1988); State v. Beja, 451 So.2d 882, 883 (Fla. 4th DCA 1984); or (2) where the passenger establishes a legitimate expectation of privacy in the area searched by demonstrating, for example, an ownership interest or other lawful proprietary interest in the area searched, see Amoss, 547 So.2d at 716-17; State v. Rome, 500 So.2d 255, 256 (Fla. 1st DCA 1986); Acebo v. State, 415 So.2d 909, 910 (Fla. 2d DCA 1982). In moving for suppression of the seized firearm, it is clear on the record before us that Hernandez failed to establish that he had any reasonable expectation of privacy to this rented vehicle or (for obvious reasons) its contents. See Amoss, 547 So.2d at 716-17. This being the case, he clearly would have standing only to contest the validity of the initial stop of this vehicle by detectives. If the initial stop of this vehicle and the request for Hernandez to exit this vehicle was valid and lawful, then, Hernandez's suppression motion can be summarily denied without addressing the propriety of the search.
The driver's undisputed act of driving across the grassy median which divided the north and south bound traffic was a civil traffic violation for which he could have been cited by the police pursuant to section 316.090(2). The driver's commission of this traffic infraction thus provided the detectives with probable cause for the lawful stop and detention of this vehicle, regardless of their actual motives. In Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the United States Supreme Court found the temporary stop and detention of a motorist to be valid under the Fourth Amendment where the officer has probable cause to believe the motorist has violated a traffic law, even if a reasonable police officer would not have detained a motorist for such a violation. See also Anderson v. Steven R. Andrews, P.A., 692 So.2d 237, 241 (Fla. 1st DCA 1997). Contrary to earlier pronouncements made by our state supreme court,[3] under Whren, the test is whether an officer could have stopped the vehicle for a traffic infraction. 517 U.S. at 813, 116 S.Ct. 1769 (the constitutional reasonableness of traffic stops under the Fourth Amendment does not depend on the actual motivations of the individual officers involved); see also Anderson, 692 So.2d at 241; Petrel v. State, 675 So.2d 1049, 1050 (Fla. 4th DCA 1996). Further, once the detectives had probable cause for the temporary stop and detention of this vehicle, they were also lawfully entitled under Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882, 884, 137 L.Ed.2d 41 (1997), to order both the driver and Hernandez to exit the car without violating the Fourth Amendment's prohibitions against unreasonable seizures. The lower court's conclusion then that Hernandez was illegally detained when he was ordered out of the vehicle was error as a matter of law. Accordingly, where the stop and detention of this vehicle was lawful, we conclude that Hernandez as a passenger in a car rented to another, lacked standing to challenge the validity of the search of this car or of its contents where he disclaimed any ownership or possessory interest therein. See Rakas, 439 U.S. at 148-49, 99 S.Ct. 421; see also Williams v. State, 640 So.2d 1206, 1209 (Fla. 2d DCA 1994)(although passenger had standing to contest stop, he had no right to complain of search where he disavowed any possessory interest in the items seized); State v. Lagree, 595 So.2d 1029, 1031 (Fla. 1st DCA 1992)("A mere passenger normally does not have standing to contest the search *837 of a car in which he is riding."); State v. Davis, 415 So.2d 82, 84 (Fla. 4th DCA 1982).
We therefore reverse the order under review and remand for further proceedings.
NOTES
[1] Section 316.090 "Driving on divided highways" provides as follows:

(1) Whenever any highway has been divided into two or more roadways by leaving an intervening space or by a physical barrier or clearly indicated dividing section so constructed as to impede vehicular traffic, every vehicle shall be driven only upon the right-hand roadway unless directed or permitted to use another roadway by official traffic control devices or police officers.
(2) No vehicle shall be driven over, across, or within any such dividing space, barrier, or section, except through an opening in such physical barrier or dividing section or space or at a crossover or intersection as established, unless specifically authorized by public authority.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] See, e.g., State v. Daniel, 665 So.2d 1040, 1043 (Fla.1995) (in determining whether a stop for a minor traffic violation which results in the seizure of evidence was impermissible under the Fourth Amendment, the proper analysis is whether a reasonable officer following usual police practices would have stopped the vehicle for the traffic infraction); Kehoe v. State, 521 So.2d 1094, 1095-96 (Fla.1988) (same).