SHARP, W., J.
Clinton appeals from his conviction and sentence for possession of cocaine[1] after he pled nolo contendere pursuant to a plea agreement following the denial of his motion to suppress. Clinton reserved his right to appeal, and the evidence seized during his encounter with the police is dispositive. We have jurisdiction,[2] and we reverse.
The facts in this case are not in dispute. Deputy Medlin stopped a vehicle driven by Ms. Galloway because it had a faulty tail light. The stop occurred at the entrance to Quad Villas, an apartment complex in the Silver Springs area near Ocala, Florida. Clinton was seated in the front passenger seat when the car was stopped. Deputy Jones was also present to back up Deputy Medlin, as was a third deputy, Chisholm.
Galloway and Clinton gave conflicting accounts as to Clinton’s name, why Clinton was riding in the car, and whether they lived together at Quad Villas. Medlin asked to search the vehicle and Galloway gave her consent to do so. Clinton was ordered out of the car, and he consented to a search of his person. Clinton was patted down, but the deputies found nothing.
Before searching Galloway’s vehicle, Medlin placed Clinton in the back seat of his patrol car, with Chisholm standing alongside it. Medlin closed the car door, leaving Clinton a virtual prisoner. He could not open the locked windows or doors, and there was a plexiglass window between the front and back seats of the police car. Deputy Jones testified the reason Medlin placed Clinton in the patrol vehicle was because of the discrepancies in the stories between Clinton and Galloway, and because Clinton appeared nervous. Deputy Medlin testified he was concerned with officer safety, and because traffic stops in that area often resulted in bystanders gathering and disrupting police investigations. But there was no evidence of any persons or a crowd gathering in this case.
Medlin testified Clinton voluntarily agreed to sit in the back of the patrol car while the other vehicle was searched. Medlin also conceded that at the time he placed Clinton in the patrol vehicle, he had no reason to suspect any criminal activity on Clinton’s part. Clinton testified he was told to get into the patrol car and did not consent to do so. He complied because he thought if he did not the deputies would view him as resisting and arrest him. Nothing Clinton did or said during that time indicated he thought he was free to leave. Further, it was clear that Clinton could not have exited the vehicle as he was locked inside.
The Galloway car was searched and the deputies found nothing. Deputy Medlin then opened the patrol car door and released Clinton. Approximately fifteen minutes had passed since the vehicle was initially stopped. After Clinton exited the *962 vehicle, Medlin checked the rear seat of the patrol car and discovered crack cocaine pushed down into it. Its discovery led to Clinton’s formal arrest and these criminal charges.
Clinton moved to suppress the evidence on Fourth Amendment grounds. He argued that police officers unlawfully detained him for an unreasonably long period of time, which was more than necessary to investigate the traffic stop. He also argued that officers illegally seized him by placing him in the back of the patrol car, without any probable cause to suspect he was guilty of criminal activity.
We review appeals on a motion to suppress under a de novo standard. Ornelas v. U.S., 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); State v. Hernandez, 718 So.2d 833 (Fla. 3d DCA 1998). The standard for measuring whether a person is seized for purposes of the Fourth Amendment is that of “objective reasonableness.” Florida v. Jimeno, 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). That is, what would a reasonable person have understood by the events which transpired between the officers and the suspect? Florida v. Jimeno. Would a reasonable person have understood that an officer’s request to sit in a vehicle meant being locked into the patrol car without means of egress?
A seizure occurs when a person is actually physically subdued by a police officer or submits to the officer’s show of authority. California v. Hodari D, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991); Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Bartee, 623 So.2d 458 (Fla.1993); Perez v. State, 620 So.2d 1256, 1257 (Fla.1993); State v. Canada, 715 So.2d 1164 (Fla. 5th DCA 1998); State v. Brotan, 616 So.2d 124 (Fla. 2d DCA 1993). The Florida Supreme Court has held that a person is seized if, under the circumstances, a reasonable person would conclude that he or she is not free to end the encounter and depart. Popple v. State, 626 So.2d 185 (Fla.1993); Jacobson v. State, 476 So.2d 1282 (Fla.1985).
Where abandonment of evidence is the product of an illegal stop, the abandonment is involuntary and the abandoned property must be suppressed. State v. Anderson 591 So.2d 611, 613 (Fla.1992). Evidence abandoned in a patrol vehicle, where the suspect has been detained without probable cause or other justification, requires suppression of the evidence seized. Lawrence v. Henderson, 478 F.2d 705, 708 (5th Cir.1973)(no voluntary abandonment of evidence where defendant concealed narcotics paraphernalia in police vehicle due to illegal arrest). See also, U.S. v. Richardson, 949 F.2d 851, 857-858 (6th Cir.1991); U.S. v. Ricardo D., 912 F.2d 337, 340 (9th Cir.1990).
None of the reasons given by the deputies were grounded on probable cause or would have otherwise justified Clinton’s confinement in the patrol car. The nature and extent of a detention based on something less than probable cause to suspect criminal activity must be minimally intrusive. Melendez v. Sheriff of Palm Beach County, 743 So.2d 1145 (Fla. 4th DCA 1999), citing United States v. Place, 462 U.S. 696, 703, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).
The reasons given to justify the confinement here, officer safety and the gathering of a crowd, are not factually supported by the record. There were three deputies on the scene and one deputy did not participate in the search, but rather stood by the patrol car in which Clinton was locked. It was not a situation in which Clinton would have been left unguarded but for the confinement in the patrol vehicle. And the earlier search of his person revealed he was unarmed. Nor was there any evidence that persons were gathering in a crowd situation. His confinement in a locked police vehicle went beyond what the situation called for and *963 violated the fourth amendment. See, United States v. King, 990 F.2d 1552, 1568-1564 (10th Cir.1993)(procedure went beyond what was necessary to protect officer’s safety).
The validity of consent[3] — in this case to be placed in a patrol vehicle— should be judged by the totality of the circumstances. Washington v. State, 658 So.2d 362 (Fla.1994). Under the undisputed facts of this case, Clinton was seized when he was placed in the locked rear of the patrol car. See U.S. v. Butler, 223 F.3d 368 (6th Cir.2000); U.S. v. Jefferson, 906 F.2d 346 (8th Cir.1990). There was no probable cause or suspicion of criminal activity on Clinton’s part at the time he was placed in the patrol vehicle. And a reasonable person would not believe he or she was free to exit the car and leave the scene, even if he could have opened the door, which all concede, Clinton could not have done.
Although a suspect’s voluntary abandonment of evidence can remove the taint of illegal conduct, the abandonment must be truly voluntary and not merely the product of police conduct. U.S. v. Beck, 602 F.2d 726 (5th Cir.1979). Assuming Clinton left the contraband in the seat of the patrol vehicle, several factors[4] are relevant in considering whether this act was the product of the illegal police conduct, thereby requiring it to be suppressed. Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); U.S. v. Bailey, 691 F.2d 1009 (11th Cir.1982). Courts consider the temporal proximity of the arrest or detention, to the defendant’s act. Brown; Dunaway. Specifically, if there are any intervening events or circumstances that negate the primary illegal police conduct, the government may defeat a claim that illegal police conduct produced the evidence, through the demonstration of a break in the causal chain. Dunaway. In this case, the drugs were abandoned during the course of the illegal seizure and there were no intervening events to isolate the abandonment of the drugs from the illegal seizure. See Lawrence v. Henderson, 478 F.2d 705 (5th Cir.1973).
If a seizure is illegal under the Fourth Amendment, it follows that evidence obtained as a result of the seizure is “fruit of the poisonous tree,” and must be excluded. U.S. v. Arango, 912 F.2d 441 (10th Cir.1990).
REVERSED.
HARRIS and GRIFFIN, JJ., concur.

. §§ 893.03(2)(a)4, 893.16(6)(a), Fla. Stat. (1999), a third degree felony.

. Fla. R.App. P. 9.140(b)(2); § 924.051(4), Fla. Slat. (2000). See also, Amendments to Rules of Appellate Procedure (Fla. October 12, 2000); Brown v. State, 376 So.2d 382 (Fla.1979); State v. Ashby, 245 So.2d 225 (Fla.1971).

. The evidence was sufficient to show that Clinton consented to being placed in the back of the patrol vehicle, but by its nature, voluntary consent includes the right to rescind that consent. Smith v. State, 753 So.2d 713 (Fla. 2d DCA 2000); Jackson v. State, 730 So.2d 364 (Fla. 4th DCA 1999).

. In addition, other evidence obtained from a source which is independent the illegal action, and whether police would have inevitably discovered the illegally obtained evidence, may also be considered. Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). These factors are not relevant here.