DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**EDDIE TYLER,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D14-449

[February 10, 2016]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Karen Miller, Judge; L.T. Case No. 502013CF009808AXXXMB.

Carey Haughwout, Public Defender, and Zainabu Rumala, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Nancy Jack, Assistant Attorney General, West Palm Beach, for appellee.

CIKLIN, C.J.

After his motion to suppress was denied, the appellant pled guilty to the charge of being a delinquent in possession of ammunition. He reserved his right to appeal the suppression ruling, which is dispositive. We agree with the appellant that the state did not meet its burden in establishing an exception to the warrant requirement for searches, and we reverse.

The evidence at the suppression hearing revealed the following. An officer with the Riviera Beach Police Department encountered the appellant, who was the passenger in a vehicle, during a traffic stop. Upon discovering the driver's license of the driver was suspended, the officer placed the driver under arrest. During a search of the driver incident to arrest, the officer came upon an unspecified amount of marijuana in the driver's pocket.

The vehicle did not belong to either the driver or the appellant, and the officer was unable to contact the owner. The officer arranged to have

the vehicle towed. Meanwhile, the officer conducted an inventory of the vehicle. In the trunk of the vehicle, the officer found a suitcase with the appellant's name written on it. The suitcase contained identification cards for the appellant. The officer observed an open pocket on the front of the suitcase; the pocket contained a black sock tied in a knot with "little bumps inside it." The officer opened the sock and discovered seventeen "live ammunitions" nestled within. After the officer arrested the appellant, the appellant admitted that the contents of the suitcase belonged to him.

The officer testified that, while conducting the inventory search, he made a log, pursuant to the department's impoundment policy. He had been trained in conducting inventory searches of vehicles. During that training, he learned that "if we go to tow the vehicle all the contents inside the vehicle [have] to be documented as for liability reasons."

The state introduced the department's impoundment policy, which provided that an arrest of an individual who is driving a vehicle "will result in the vehicle being towed to an approved storage facility by the authorized towing firm," and that "[a]n inventory search will be conducted and a log will be produced of all vehicles authorized to be towed by the Police Department." The state also introduced the department's policy on search and seizure, which appears to be a summation of case law on search and seizure, some of which was outdated. Neither policy spelled out the department's policy for inventory searches upon impoundment of a vehicle. The officer testified that pursuant to the search and seizure policy, an "officer may as incident to an arrest search the entire passenger compartment of the vehicle and any contents . . . found therein whether opened or closed without the requirements of probable cause." Thus, he has always searched all containers in a vehicle while conducting an inventory as that was the procedure he was taught.

As a preliminary matter, we address standing, an issue not raised by the parties below or on appeal. Although the appellant did not own the vehicle, the evidence established his possessory interest in the suitcase and its contents. Thus, he established his standing to contest the search of those items. *See State v. Hernandez*, 718 So. 2d 833, 836 (Fla. 3d DCA 1998).

We turn now to the merits. "A warrantless search is *per se* unreasonable under the Fourth Amendment subject to a few well-defined exceptions. The state has the burden to prove that an exception to the warrant requirement applies." *Kilburn v. State*, 54 So. 3d 625, 627 (Fla.

1st DCA 2011) (internal citation omitted).  In this case, the state relied on the inventory search exception.  Our courts have elaborated on the exception:

> An inventory search serves the needs of protection of the owner's property, and protection of police against potential danger from such things as explosives.
>
> For an inventory search to satisfy the fourth amendment, law enforcement must conduct the search "in good faith and not use the inventory search as a subterfuge to conduct a warrantless search for incriminating evidence."  In addition, the impoundment and inventory of a vehicle and its contents must be performed in accordance with the governmental entity's standardized operating procedures.

*Williams v. State*, 903 So. 2d 974, 976-77 (Fla. 4th DCA 2005) (internal citation omitted); *see also Leary v. State*, 880 So. 2d 776, 778 (Fla. 5th DCA 2004) ("[S]tandardized criteria or routines must be established to regulate inventory searches.  The police activity challenged must be in conformity with those procedures."  (citations omitted)); *Patty v. State*, 768 So. 2d 1126, 1127 (Fla. 2d DCA 2000) ("[A]n impoundment and inventory search must be conducted according to standardized criteria.") "[T]hese standardized procedures, which limit police discretion in determining the scope of the inventory search, ensure that the police will not abuse this exception to the warrant requirement."  *Patty*, 768 So. 2d at 1127.  Further:

> The validity of an inventory search relies on its purpose.  The court must determine whether the impoundment of the vehicle was justified, and not just a pretext to an exploratory search of a vehicle.  In making that determination, the court should consider the reason for the impoundment.

*Williams*, 903 So. 2d at 977 (internal citation omitted).

Accordingly, if a department's standard inventory procedure calls for the opening of closed containers, then such action can be found to be a reasonable part of an inventory search.  *See State v. Wells*, 539 So. 2d 464, 469 (Fla. 1989).  However, the inventory policy does not need to mandate that all containers either be opened or that no containers be opened:

> [I]n forbidding uncanalized discretion to police officers

3

conducting inventory searches, there is no reason to insist that they be conducted in a totally mechanical "all or nothing" fashion. "[I]nventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." A police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself. Thus, while policies of opening all containers or of opening no containers are unquestionably permissible, it would be equally permissible, for example, to allow the opening of closed containers whose contents officers determine they are unable to ascertain from examining the containers' exteriors. The allowance of the exercise of judgment based on concerns related to the purposes of an inventory search does not violate the Fourth Amendment.

*Florida v. Wells*, 495 U.S. 1, 4 (1990) (citations omitted). In sum, although officers have some discretion with respect to inventory searches, there must be evidence of the department's procedures for such searches. In the absence of any policy whatsoever with respect to the opening of closed containers, a search of the container is not sufficiently regulated by the Fourth Amendment. *Id.* at 4-5.

Here, the record does not indicate any pretextual reason for impoundment of the vehicle. The officer testified that the owner could not be located after the driver was arrested. Additionally, the department's impoundment policy provides for impoundment after a driver is arrested. There was also no indication that the officer's search of the trunk, luggage, and sock was for any reason other than to catalog the contents of the vehicle before impoundment.

However, the state provided no evidence of the department's inventory policy, other than the officer's testimony that one existed and that the contents of the impounded vehicle were required to be inventoried and logged for liability purposes. This sort of testimony has been found to be insufficient. *See Kilburn*, 54 So. 3d at 627 (reversing denial of motion to suppress where officer testified it was department policy to conduct an inventory search whenever a vehicle was towed but he acknowledged there were no standardized criteria for performing such a search and there was no evidence that it was a standard procedure to open closed containers during the search); *Leary*, 880 So. 2d at 778 (finding that the record lacked sufficient evidence of any standardized procedure where

4

the officer testified "only that the vehicle 'was going to be towed' from the premises and it is the sheriff's policy to inventory vehicles before towing"); *Beezley v. State*, 863 So. 2d 386, 387 (Fla. 2d DCA 2003) (reversing denial of motion to suppress where officer testified that "pursuant to Department policy, the decision to impound a vehicle is within an individual officer's discretion, but after the decision to impound is made, a complete inventory must be performed").

The state points to the officer's testimony that he was trained to search the entire vehicle during an inventory search, including contents of closed containers. However, because of the way the state conducted the direct examination, it appears the officer was referring to the department's search and seizure guide rather than to an inventory policy. The officer's testimony simply failed to make it clear that the officer's search of the vehicle and his training regarding such searches was pursuant to a set of standardized procedures *related to inventory searches*. The Riviera Beach Police Department may have such standardized procedures or may not. There is a total lack of evidence in the record to suggest, however, that these standardized procedures existed at the time of the warrantless search of the appellant's personal property.

As an alternative avenue to affirming, the state argues that the search was legal because the officer developed probable cause after a search of the driver incident to arrest turned up marijuana. We find the record was not sufficiently developed for us to undertake a totality of the circumstances analysis. We reverse and remand for the trial court to vacate the appellant's conviction and sentence, grant his motion to suppress, and permit him to withdraw his plea.

*Reversed and remanded.*

TAYLOR and LEVINE, JJ., concur.

\*      \*      \*

***Not final until disposition of timely filed motion for rehearing.***

5